## BARUCH v. BEECH AIRCRAFT CORPORATION.

No. 3735.

United States Court of Appeals
Tenth Circuit.

May 27, 1949.

Rehearing Denied Aug. 2, 1949.

See also, 10 Cir., 172 F.2d 445.

Wayne Coulson and Paul R. Kitch, Wichita, Kan. (Howard T. Fleeson, Homer V. Gooing, Dale M. Stucky, and Donald R. Newkirk, Wichita, Kan., on the brief), for appellant.

W. E. Stanley, Wichita, Kan. (Claude I. Depew, Lawrence Weigand, William C. Hook, and Lawrence E. Curfman, Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellant, Belle W. Baruch, brought this suit in tort against appellee, Beech Aircraft Corporation, to recover the value of an airplane sold by Beech to her, and delivered to her agent and pilot, who crashed and destroyed it while taking it off Beech's private airport. The suit is based

upon the premise that the pilot and agent breached his employment contract by attempting to fly the plane while intoxicated, and that Beech, through its agents, wrongfully induced or brought about the breach by actively assisting the pilot in attempting to fly the plane, and is therefore liable as a tortfeasor.

On a trial of the case without a jury, the trial court treated the action as founded upon negligence, and held that although Beech was negligent, Baruch's pilot and mechanic were both guilty of contributory negligence, barring recovery; that the pilot's state of intoxication did not justify the invocation of last clear chance as applied in such cases under Kansas law, and accordingly gave judgment for Beech.

The facts as found by the court are not materially in dispute. Belle Baruch, a citizen of South Carolina, purchased a twin-engine dual control airplane from Beech at Wichita, Kansas. Her pilot, Horton, and mechanic, Zozula, were sent to Wichita, with written authority in Horton to accept delivery. On April 6, 1946, the plane was delivered to Horton as her agent and employee, and he took possession of it, flew it to Kansas City, back to Beech's private airport, then down to Winfield, Kansas, and back to the airport, where it was placed in Beech's hanger as a gratuitous bailee. On the next morning, at Horton's request, Beech's courtesy car picked him up at his hotel and took him to the home of Beech's service manager, DeSpain. He arrived there about nine o'clock, and while there took two or three large drinks of whisky. Before leaving, he instructed the mechanic, Zozula, and a passenger to proceed to the airport for the purpose of servicing and readying the plane for a flight to Wilmington, Delaware. Horton, DeSpain and another Beech employee named Hill arrived at the hanger about eleven o'clock. The plane had been removed from the hanger and was standing on the apron of the runway. Horton continued to drink from a bottle taken from his own suitcase, and became noticeably intoxicated. On three occasions, DeSpain urged him not to attempt to fly the plane that day, but to wait until the next day. Horton insisted that he was not intoxicated, but was merely attempting to scare his passenger, Meyers. He boasted that he had frequently flown airplanes while under the influence of liquor, particularly during his service overseas in the World War. He entered the plane along with Zozula and the passenger, and attempted to start the motors, but apparently was unable to do so. Observing the pilot's difficulty, and fearing that he would run the battery down, Beech's agent, DeSpain, entered the plane and adjusted the throttles to proper position, but again urged Horton not to attempt to take it off. Horton's reply was for DeSpain to get out of the plane—that he was going to Wilmington. After DeSpain left the plane, Baruch's mechanic Zozula, pressed the starter button, the motors started, Horton taxied the plane down to the runway, warmed it up, skillfully turned it into position, and started the take-off with a sixteen mile crosswind. After reaching an altitude of some 50 to 100 feet, he attempted a quick climb and a down-wind turn, resulting in a crash which killed the pilot and the mechanic, and completely destroyed the plane. The court found that the down-wind maneuver was extremely foolhardy and dangerous, and that Horton, an experienced pilot, would not have attempted such maneuver except for his state of intoxication.

Appellant invokes the rule which, according to its earliest concept, gave a right of action against a party who, without legal justification, maliciously procures or induces the breach of a contract between two other parties. Lumley v. Gye, 2 E.&B. 216 (1853); Bowen v. Hall, 6 Q.B.D. 333 (1881); Temperton v. Russell, 1 Q.B. 715 (1893); Beekman v. Marsters, 195 Mass. 205, 80 N.E. 817, 11 L.R.A.,N.S., 201, 122 Am.St. 232, 11 Ann.Cas. 232; Aikens v. Wisconsin, 195 U.S. 194, 195, 204, 25 S.Ct. 3, 49 L.Ed. 154. See also 36 Harv.L.R. 663. And which, according to its modernized version, gives a right of action against one, who without privilege or justification, intentionally or negligently invades or interferes with the contractual rights of another. Sidney Blumenthal & Co. v. United States, 2 Cir., 30 F.2d 247; Keene Lumber Co. v. Leventhal, 1 Cir., 165 F.2d 815; see cases collected 84 A.L.R. 52; 41 Harv.L.R. 728.

We need not probe the outer limits of the rule, for controlling Kansas decisions have set the pattern for this case by adopting the Restatement rule giving a right of action against "one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another * * *." Restatement of Torts, Sec. 766. See Nulty v. Hart-Bradshaw Lbr. & Grain Co., 116 Kan. 446, 227 P. 254; Russell v. Bovard, 153 Kan. 729, 113 P.2d 1064, 1069; Restatement of Agency, Sec. 312; Restatement of Torts, Sec. 876. It is thus plain that Kansas has not embraced mere negligent acts of invasion as a basis for liability. Intent or purpose is an essential element of the cause of action under Kansas law. Indeed, the appellant agrees that to establish her cause of action, she must show: (1) the existence of the contract between Horton and herself; (2) knowledge of that contract on the part of Beech; (3) an intentional interference with the known contract right without legal justification; and (4) resulting damages to her. She accordingly alleged and now contends as the gravamen of her suit, that when DeSpain actively assisted her pilot to start the engines, he thereby intentionally or purposely caused her agent to breach the implied conditions of his contract of employment by attempting to fly the plane while intoxicated.

While the trial court found negligence and contributory negligence, and based its judgment thereon, the claim is not based upon negligence. None is alleged or invoked as a basis for recovery. The question of negligence or contributory negligence cannot, therefore, be determinative of Beech's liability or Baruch's right to recover. If Beech intentionally and purposely caused Baruch's agent to breach his employment contract, it would be no defense that the agent cooperated or contributed to the breach. To impute the contributory acts of the agent to the principal would undermine the rationale of the rule itself, for in its very nature, the wrongful interference may very well involve the cooperation or participation of the agent.

Undoubtedly, Beech had actual knowledge of the pilot's employment contract with Baruch, and was constructively charged with regulations forbidding the flying of an airplane while intoxicated. Horton did attempt to fly the plane in violation of the employment contract, resulting in its complete destruction. The sole question then is whether the acts of Beech's agent, in connection with the starting of the engines, constituted an intentional or purposeful interference with the employment contract within the meaning of the rule.

The trial court properly treated the relationship between Baruch and Beech as bailor and bailee, which required the surrender of the possession of the plane upon Baruch's agent's demand, and the use of its airport to take it off. The court specifically absolved Beech of any act of omission or commission, or indifference, amounting to a willingness to injure Baruch's property. Implicit in that finding, we think, is also a negation of any intent or purpose to cause Horton to breach his employment contract. Indeed, DeSpain's repeated attempts to persuade Horton not to take the plane off is inconsistent with any wrongful purpose or intent.

It is argued with force and reason that if DeSpain had not entered the plane to adjust the throttles the batteries would have soon run down, the plane would have been disabled, and it being Sunday and no other battery available, Horton would have consequently been unable to attempt to fly it. But the culpability of DeSpain's affirmative acts must be considered in the setting in which they were done, and balanced against his duty as a gratuitous bailee. When the conflicting interests and duties are critically weighed, it becomes manifestly clear, we think, that DeSpain's affirmative acts, although perhaps culpable, did not purposely cause Horton to breach his employment contract with Baruch.

As an alternative grounds of recovery, Baruch has invoked the doctrine of last clear chance, claiming that Horton's state of intoxication rendered him incapable of appreciating the consequences of his acts, and Beech had the last clear chance to avoid the accident by preventing him from attempting to fly the plane. Since, as we have seen, neither primary nor contributory

**4**

negligence controls or conditions the right to recover, it is difficult to apprehend how last clear chance can form the basis for recovery. But be that as it may, the trial court factually resolved that issue against the appellant, finding that although Horton's state of intoxication was such as to render him incapable of normal judgment, it was not such as to "render him helpless or wholly unable to take care of and protect himself." Specifically, the court found that Horton was not incapacitated from flying an airplane, and that it was "a great probability that he would take the airplane off without mishap." These findings, supported by the evidence, take the case out of the doctrine of last clear chance as applied to helpless drunks. See Morlan v. Hutchinson, 116 Kan. 86, 225 P. 739.

The judgment is affirmed.