BETTY WIGGINS, an Individual, and BETTY WIGGINS, Guardian Ad Litem for JONI JEAN WIGGINS and MARK ALBERT WIGGINS, Appellants, *v.* HUGHES TOOL COMPANY, a Delaware Corporation, Respondent.

No. 6350

April 29, 1971                          484 P.2d 566

[Rehearing denied May 19, 1971]

*George, Steffen & Simmons,* of Las Vegas, for Appellants.

*Cromer and Barker* and *Kent W. Michaelson,* of Las Vegas, for Respondent.

**OPINION**

By the Court, MOWBRAY, J.:

This appeal is from a summary judgment for Hughes Tool Company and against Betty Wiggins as an individual and as guardian of her two children, Joni Jean Wiggins and Mark Albert Wiggins.

Betty commenced this action in the district court to recover damages for the alleged wrongful death of her husband, Rommie Gene Wiggins, who was killed while flying as a passenger in an airplane owned and piloted by Harold Carter. Hughes answered the complaint and then moved for summary judgment on the grounds that there was no genuine issue as to any material fact in the case and that Hughes was entitled to judgment as a matter of law. NRCP 56(b).[1] The district judge agreed, and he granted summary judgment in favor of Hughes. We affirm.

1. *The Facts.*

Harold Carter was the owner of a single-engine Navion aircraft. He kept the plane "tied down" at the North Las Vegas Air Terminal, which is owned and operated by Hughes Tool

---

[1]NRCP 56(b):

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

Company.[2] About 4:30 a.m. on August 21, 1969, Carter and Wiggins, accompanied by another man, arrived at the terminal in Carter's car. Upon Carter's request, one James Tilley opened the terminal gate so that Carter could drive to his plane. Tilley was employed as a lineman at the terminal on the 10 p.m. to 6 a.m. shift. Since the terminal was closed to the public during those hours, Tilley was charged with admitting aircraft owners who maintained their planes at the terminal, and with fueling the aircraft upon the owners' request, which he did in this case, pursuant to Carter's instructions. Carter then signed the ticket for the gas, and Tilley returned to the terminal office. About 5 minutes later, Tilley heard Carter warming up his plane in preparation for takeoff on Runway 7. Since Runway 7 was being repaired, Tilley radioed Carter and so advised him. He told Carter that Runway 22 was in service. Carter took off on Runway 22, and his plane crashed about 45 minutes later near Ash Meadows, Nevada, killing the occupants.

Although the record does not reflect the fact, the parties have agreed, for the purposes of presenting the principal issue in this appeal, that sometime *after* Tilley had admitted Carter to the terminal, but *prior* to Carter's takeoff, it was evident to Tilley that Pilot Carter was "substantially under the influence of alcohol" and that Passenger Wiggins was "heavily intoxicated." It is plaintiff-appellants' position that, once Tilley became aware of the condition of Carter and Wiggins, he then had a duty to prevent their takeoff, and that his failure to so act was the proximate cause of the death of Wiggins.

2. *The Hughes-Carter Relationship.*

While the complete terms of the Hughes-Carter agreement have not been presented for our consideration, from the record before us we conclude that the relationship between Carter and Hughes was that of bailor-bailee. In Hendren v. Ken-Mar Airpark, Inc., 382 P.2d 288 (Kan. 1963), an aircraft owner who had rented space from a defendant airport took off while under the influence of intoxicants, carrying a passenger who had also been drinking. The plane crashed, killing both occupants. Sustaining a demurrer to a wrongful death action, the court ruled, 382 P.2d at 295:

"The hangaring of the particular airplane in question by Ken-Mar involves the legal principle of bailment. The cases [cited earlier] are clear that the act of Ken-Mar in furnishing

---

[2]Counsel cannot tell us, nor does the record reflect, the complete terms of the Hughes-Carter agreement or whether it was oral or written.

hangar space for the Pegasus [Flying Club, owner of the] airplane upon its premises created a bailor-bailee relationship between those parties. . . ."

The court concluded, 382 P.2d at 296:

". . . Ken-Mar, even if it had full knowledge of the contemplated flight by St. Vrain [a member of the Pegasus Flying Club and presumably the pilot] and the appellants' decedent prior to take-off, would have had a duty as bailee to surrender possession of the plane upon demand and to allow the use of its airport for the take-off."

In the case of Baruch v. Beech Aircraft Corp., 175 F.2d 1, 3 (10th Cir. 1949), the court ruled:

"The trial court properly treated the relationship between Baruch [owner of a plane destroyed in a crash while operated by Baruch's pilot, who had been drinking] and Beech [the defendant airport] as bailor and bailee, which required the surrender of the possession of the plane upon Baruch's agent's [the pilot's] demand, and the use of its airport to take it off. . . ."

Realistically speaking, it is difficult to fathom just how Tilley could have prevented Carter's takeoff. It is true that Tilley gassed the aircraft at Carter's request, which service was available to all owners who maintained their aircraft at the terminal. In a controlled airport, takeoffs and landings are under the direction and clearance of a control tower. But North Las Vegas Air Terminal was not a controlled airport in August 1969.

This court ruled as follows in Mills v. Continental Parking Corp., 86 Nev. 724, 725, 475 P.2d 673, 674 (1970), a bailor-bailee case involving a parking-lot attendant having custody of the car keys of an owner who had parked his car on the lot and who later returned under the influence of intoxicants and was given his keys:

". . . The negligent entrustment theory of tort liability does not apply to the normal bailor-bailee relationship since the bailee is duty bound to surrender control of the car to the bailor upon demand or suffer a possible penalty for conversion. Indeed, if the bailee refuses to return the car at the end of the bailment it is presumed that the car was converted by him. . . ."

In the present case, Tilley had no control of the plane. The keys were in Carter's possession at all times. Tilley merely admitted Carter and his friends to the terminal and fueled the plane. Regrettably, the tragic crash occurred 45 minutes later

near Ash Meadows, Nevada. However, to impose civil liability on Hughes Tool Company, on the theory that Tilley had a duty to prevent Carter's takeoff and that Tilley's failure to do so was the proximate cause of Wiggins's death is incomprehensible. Therefore, the order granting summary judgment is affirmed.

We concur.

ZENOFF, C. J., BATJER, THOMPSON, and GUNDERSON, JJ., concur.