[No. G004703. Fourth Dist., Div. Three. Nov. 23, 1988.]

LINDEN MAURICE KNIGHTEN et al., Plaintiffs and Appellants, v.
SAM'S PARKING VALET et al., Defendants and Respondents.

## COUNSEL

Wylie A. Aitken, James B. Abeltin and Steven J. Wilson for Plaintiffs and Appellants.

Chase, Rotchford, Drukker & Bogust, Warren B. Campbell, Kirstin H. Simonson, Patrick A. Long, Kirtland & Packard, Michael L. Kelly, Gregory G. Lynch, Mark S. Coon and Bruce G. Shanahan for Defendants and Respondents.

## OPINION

**SCOVILLE, P. J.**—Appellants Linden and Linda Knighten were injured in an accident caused by a drunk driver. They brought suit against several defendants, including the restaurant which served the drunk driver and the valet service which returned her car to her. The Knightens appeal the judgment dismissing the restaurant and the valet service from the case after their demurrers to the second amended complaint were sustained without leave to amend.

### FACTS

Appellants' second amended complaint alleged the following facts. On June 2, 1983, Bonnie Vanderwerff drove her Mercedes Benz into the parking lot of a restaurant called Cano's, owned and operated by El Torito Restaurants, Inc. (El Torito). Vanderwerff left the car with a valet service under contract with El Torito, Sam's Parking Valet (Valet). Vanderwerff remained for some time, bought a number of drinks, and became increasingly intoxicated, to the point where it was clear she was unfit to drive. On some previous occasions, El Torito and Valet had withheld vehicles and keys from intoxicated patrons. When Vanderwerff went to reclaim her car, however, Valet turned over the car and the keys, although personnel of both Valet and El Torito were aware of Vanderwerff's condition. Vanderwerff exited the parking lot and hit the Knightens, who were standing in front of another restaurant.

### PROCEDURAL HISTORY

Appellants' original complaint alleged El Torito's negligence in serving Vanderwerff alcohol after she was intoxicated and in supplying Vanderwerff

with her car. El Torito's demurrer was sustained with leave to amend, on the grounds that Business and Professions Code section 25602 conferred immunity for serving alcoholic beverages and El Torito had no right to withhold Vanderwerff's car.

Appellants' first amended complaint named Valet as an additional defendant. It essentially repeated and extended the negligence allegations of the original complaint, introducing such variants as negligent failure to warn the police of Vanderwerff's condition and negligence per se in abetting criminal drunk driving. Both El Torito and Valet filed general and special demurrers. The demurrers were sustained with leave to amend, on the grounds of uncertainty and failure to plead facts establishing duty.

Appellants' second amended complaint alleged for the first time that El Torito and Valet had withheld vehicles from drunk patrons on prior occasions. It was otherwise similar to the first amended complaint. El Torito's and Valet's demurrers were sustained without leave to amend; the trial court entered judgment dismissing these defendants from the action.

Appellants do not challenge the dismissal of the causes of action based on negligent serving of alcoholic beverages.

## DISCUSSION

Appellants contend El Torito and Valet were under a duty to exercise due care in the return of cars to their patrons, and further that El Torito's and Valet's withholding of cars from some patrons on prior occasions constituted assumption of a duty to do likewise in this instance. They characterize the return of Vanderwerff's car to her as negligent entrustment. They also argue Business and Professions Code section 25602 does not bar civil liability for furnishing a car to its intoxicated owner. Finally, they contend Business and Professions Code section 25602, if interpreted to bar liability in this case, is inconsistent with the right of restitution provided by the California Constitution and with the equal protection guaranties of the state and federal Constitutions.

I.

As the parties have noted, the issue of whether a restaurant or valet service has a duty to withhold automobiles from intoxicated patrons is one of first impression in California. We hold no such duty exists.

"As a general rule, one owes no duty to control the conduct of another . . . ." (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203

[185 Cal.Rptr. 252, 649 P.2d 894].) Only a special relationship between the two parties, or between the one party and the potential victims of the other, creates such a duty. (*Ibid.*)

 This rule has repeatedly been held to preclude liability of a police officer who questions or detains a drunk driver, but then allows him to continue driving his car or fails to warn his passengers of their peril. (*City of Sunnyvale* v. *Superior Court* (1988) 203 Cal.App.3d 839, 842-846 [250 Cal.Rptr. 214]; *Lehto* v. *City of Oxnard* (1985) 171 Cal.App.3d 285, 289-291 [217 Cal.Rptr. 450]; *Jackson* v. *Clements* (1983) 146 Cal.App.3d 983, 986-989 [194 Cal.Rptr. 553].) The situation in which El Torito and Valet found themselves is analogous: Like the police officers in these cases, they were in temporary control of the car, and failed to act to prevent further use of the car by an intoxicated driver. If police officers have no special relationship with intoxicated citizens under such circumstances, El Torito and Valet can hardly be said to have any such relationship with Vanderwerff. Similarly, if police officers have no duty to protect the general public by preventing drunk driving, restaurants and parking services can hardly be charged with such a duty.[1]

Similarly, in *DeBolt* v. *Kragen Auto Supply, Inc.* (1986) 182 Cal.App.3d 269 [227 Cal.Rptr. 258], plaintiffs pleaded a social host ejected one Christine Eigsti, a drunken guest, from a beach party. Eigsti had no alternative other than to attempt to drive home; and, after stopping to purchase gasoline, she rammed a motorcycle from behind, killing two persons. The court rejected the contention that the corporate host had a duty to intervene despite being aware of the foreseeable consequences of her driving intoxicated. (*Id.,* at pp. 274-275.)

 Appellants' allegation that El Torito and Valet, on some prior occasions, withheld keys from intoxicated patrons does not establish a special

---

[1] In the few cases where plaintiffs have been allowed to proceed, police had intervened to the point of arresting the drunk driver, but negligently secured the vehicle or the arrestee himself afterwards. (*Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82 [172 Cal.Rptr. 461]; *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648 [161 Cal.Rptr. 140]; see also *Ransom* v. *City of Garden City* (1987) 113 Idaho 202 [743 P.2d 70, 75-76].) In other words, police are held to the same standards as the "Good Samaritan." (*Williams* v. *State of California* (1983) 34 Cal.3d at 21, 26 [192 Cal.Rptr. 233]; *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 208.) A duty of care arises only upon a deliberate act of intervention beyond the mere temporary detention of a drinking driver.

When a parking service returns a vehicle to a bailor, of course, it has expressed a decision *not* to intervene. To be sure, the valet has transitory "control" over the bailor's automobile, but only in the sense of the brief police detentions which were found insufficient to give rise to a duty in the *City of Sunnyvale, Lehto,* and *Jackson* cases. At best, and somewhat ironically, a legal duty would only arise under current law if the parking service did intervene to prevent the bailor from driving.

relationship with Vanderwerff or with appellants. Appellants have not alleged any previous incident involving Vanderwerff, or any reliance by either Vanderwerff or appellants on previous incidents involving other drivers. Even an allegation that El Torito or Valet withheld Vanderwerff's car on previous occasions would not suffice to establish a duty to withhold her car on every subsequent occasion. As noted in *Andrews* v. *Wells* (1988) 204 Cal.App.3d 533, 541 [251 Cal.Rptr. 344]: "The mere fact that defendants had accommodated [an intoxicated patron] in the past does not mean that they had a continuing duty to do so."

■ Moreover, El Torito and Valet were bailees as to Vanderwerff's car. A bailee does not "entrust" a chattel when returning it to the bailor. Indeed, the Restatement describes those who may be liable for supplying dangerous chattels to incompetents as "sellers, lessors, donors or lenders, and [ ] all kinds of *bailors,* irrespective of whether the bailment is gratuitous or for a consideration." (Rest.2d Torts, § 390, com. a, at p. 315, italics added.) Conspicuously absent from the list, of course, are bailees. (*Sampson* v. *W. F. Enterprises, Inc.* (Mo.App. 1980) 611 S.W.2d 333, 338.)

While no reported California case deals with the specific issue of parking attendant liability, a number of other jurisdictions have held that a bailee who returns a dangerous instrumentality to a drunken bailor may not be held liable for negligent entrustment. (*Congini by Congini* v. *Portersville Valve Co.* (1983) 504 Pa. 157 [470 A.2d 515, 519]; *Sampson* v. *W. F. Enterprises, Inc., supra,* 611 S.W.2d 333, 338-339; *Mills* v. *Continental Parking Corporation* (1970) 86 Nev. 724 [475 P.2d 673, 674]; *Baruch* v. *Beech Aircraft Corporation* (10th Cir. 1949) 175 F.2d 1, 3; see also *Hulse* v. *Driver* (1974) 11 Wash.App. 509 [524 P.2d 255, 259]; *Wiggins* v. *Hughes Tool Company* (1971) 87 Nev. 190 [484 P.2d 566, 568]; *Hendren* v. *Ken-Mar Airpark, Inc.* (1963) 191 Kan. 550 [382 P.2d 288, 295-296].)

In *Mills* v. *Continental Parking Corporation, supra,* 475 P.2d 673, the Supreme Court of Nevada, applying Nevada common law similar to current California law, held the heirs of a pedestrian killed by a drunk driver had no wrongful death claim against the operator of the parking lot which surrendered the car to its inebriated owner. The court pointed out that the parking lot operator, as bailee, lost its right to control the car once the owner returned to claim it, and thus could not be liable for negligent entrustment of it. The court further found the claim comparable to a claim against a tavern keeper for furnishing liquor.

■ We do not, as did these other courts, base our holding primarily on a bailee's *obligation* to return bailed items. All citizens in California have the right to interfere with an attempt to commit a crime, and drunk driving

obviously is that (Veh. Code, § 23152, subd. (a)). For example, the Legislature has declared, "Direct action on the part of private citizens in preventing the commission of crimes against the person or property of others, or in apprehending criminals, or rescuing a person in immediate danger of injury or death as a result of fire, drowning, or other catastrophe, benefits the entire public." (Gov. Code, § 13970.) This section goes on to provide that the state may indemnify private citizens for their injuries or damages while engaged in such laudable activities. (See also Rest.2d Torts, §§ 261, 263, at pp. 492-493, 495.)

Thus, El Torito or Valet could have lawfully retained the vehicle under the circumstances pleaded here, as appellants claim they have done in the past—just as any ordinary citizen may legally arrest a person who commits or attempts to commit a public offense in his presence. (Pen. Code, §§ 834, 837.) The *right* to act, however, is far different from a *duty* to act. The two should not be confused.

We find persuasive the Nevada Supreme Court's comment in *Mills*: "The imposition of civil liability in the circumstances here alleged would lead to unforeseeable consequences limited only by the scope of one's imagination. We decline to venture into that wonderland." (*Mills* v. *Continental Parking Corporation, supra,* 475 P.2d at p. 674.)

■ Appellants attempt to characterize Vanderwerff as a "dangerous condition," for which El Torito and Valet remained responsible after her departure. Clearly, this "premises liability" cause of action would impose a duty to control intoxicated patrons, and must fall with appellants' negligence claims. Such a cause of action would be particularly inconsistent with the civil immunity provided by Business and Professions Code section 25602 discussed below.

## II.

■ Business and Professions Code section 25602 was amended in 1978 to eliminate civil liability for the furnishing of alcoholic beverages to intoxicated persons. Subdivision (c) of the amended statute states the broad intent behind this modification: "The Legislature hereby declares that this section shall be interpreted so that the holdings in cases such as Vesely v. Sager (5 Cal.3d 153), Bernhard v. Harrah's Club (16 Cal.3d 313) and Coulter v. Superior Court (21 Cal.3d 144) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person."

The Legislative Counsel's initial digest of Senate Bill No. 1645, the 1978 bill amending Business and Professions Code section 25602, described the bill as stating "a legislative intent that prior judicial interpretation be reinstated so that such civil liability to a third party is incurred *solely* by the intoxicated person." (Italics added.) The Legislative Counsel's digest of the bill as amended on May 17, 1978, noted the bill's legislative "declaration" to the same effect. The third reading analyses of Senate Bill No. 1645 prepared by the Democratic and Republican caucuses of the State Senate similarly noted the bill's intent to reinstate the rule that civil liability to anyone injured by an intoxicated person "is incurred solely by the intoxicated person." Once the Governor had signed the legislation, his office issued a press release stating: "The bill declares that civil liability to a third party is incurred solely by the intoxicated person." (Governor's Press Release No. 320 (Sept. 20, 1978).) ■ Such documents may be used to determine legislative intent (*People* v. *Tanner* (1979) 24 Cal.3d 514, 520 [156 Cal.Rptr. 450, 596 P.2d 328]; *People* v. *Martinez* (1987) 194 Cal.App.3d 15, 22 [239 Cal.Rptr. 272]); indeed, it is reasonable to presume the Legislature's intent and meaning in amending a statute was that expressed in the Legislative Counsel's digest (*People* v. *Martinez, supra,* 194 Cal.App.3d at p. 22).[2]

■ The California Supreme Court has characterized the effect of the amended statute as "the imposition of sole and exclusive liability upon the consumer of alcoholic beverages . . . ." (*Cory* v. *Shierloh* (1981) 29 Cal.3d 430, 440 [174 Cal.Rptr. 500, 629 P.2d 8].) "Whether we agree or would have chosen to do otherwise, the Legislature in 1978 specifically abrogated our Supreme Court's application of common law negligence principles to alcohol consumption-related injuries." (*DeBolt* v. *Kragen Auto Supply, Inc., supra,* 182 Cal.App.3d 269, 274; see also *Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 724-725, 728 [209 Cal.Rptr. 347, 691 P.2d 1013].)

■■ Appellants' attempt to impose negligence liability on El Torito, based on the facts alleged, is inconsistent with the legislative intent behind the 1978 amendments. Similar attempts have been rejected before. *DeBolt* v. *Kragen Auto Supply, Inc., supra,* 182 Cal.App.3d 269 affirmed dismissal of a complaint alleging that the host of a beach party served alcoholic beverages to a guest until she became intoxicated, then ordered her to leave, knowing the guest's car was her only available means of transport. As the court pointed out, "[i]f we found liability possible here, soon complaints would be easily couched in language apart from furnishing or selling liquor." (*Id.* at

---

[2] We have taken judicial notice of these documents, supplied to us by Legislative Intent Service, pursuant to Evidence Code section 452. As required by Evidence Code section 455, subdivision (a) and section 459, subdivision (c), we have given the parties reasonable opportunity to present information relevant to the propriety of taking judicial notice and the tenor of the matter to be noticed.

p. 275.) The same may be said of the facts appellants allege. (See also *Andre v. Ingram* (1985) 164 Cal.App.3d 206, 208 [210 Cal.Rptr. 150].)

*Blake v. Moore* (1984) 162 Cal.App.3d 700 [208 Cal.Rptr. 703], cited by appellants, held a host who supplied a guest with both alcoholic beverages and the host's car could be found liable for negligent entrustment. *Blake,* however, specifically stated the defendant's argument of immunity "would be compelling if [the guest] had been driving his own car . . . ." (*Id.* at p. 704.) Moreover, we must disagree with *Blake's* statement that Business and Professions Code section 25602, subdivision (b) provides only "a narrow 'furnishing' [immunity]" (162 Cal.App.3d at p. 704), inapplicable wherever allegations of furnishing alcohol are combined with other allegations. The California Supreme Court has characterized this statutory immunity as "sweeping" (*Cory v. Shierloh, supra,* 29 Cal.3d at p. 436) and, as noted above, has described it as imposing "sole and exclusive liability upon the consumer of alcoholic beverages" (*id.* at p. 440), an interpretation supported by the legislative history cited above and by the statutory language proclaiming consumption of alcohol rather than the serving of it as "*the* proximate cause of injuries" (Bus. & Prof. Code, § 25602, subd. (c), italics added).

*Brockett v. Kitchen Boyd Motor Co.* (1968) 264 Cal.App.2d 69 [70 Cal.Rptr. 136] is distinguishable on several grounds. *Brockett* held an employer who serves alcohol to a minor employee assumes the duty of responsibility for the minor's well-being and proper conduct, to protect both the minor and the general public. The employer violated that duty by guiding the intoxicated minor to his car, placing him in it, and directing him to drive home. Appellants here allege no facts creating any comparable relationship or duty, nor any such active involvement in Vanderwerff's decision to drive.

Given our holding that neither El Torito nor Valet violated any duty toward appellants under the facts alleged, we need not decide whether the legislative intent behind Business and Professions Code section 25602 justifies a reading of that statute which would extend immunity to parties other than the furnisher of alcohol. We do, however, view that legislative intent as an expression of public policy supporting our finding of no duty.

### III.

Appellants contend the civil immunity conferred by Business and Professions Code section 25602 violates constitutional rights created by article I, section 28, subdivision (b) of the California Constitution. This provision, enacted as part of the "Victim's Bill of Rights," provides: "It is the unequivocal intention of the People of the State of California that all

persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case . . . in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. . . ."

Appellants argue this provision is inconsistent with *any* restriction on the civil liability of criminals, including those who commit the misdemeanor of serving alcoholic beverages to intoxicated persons (Bus. & Prof. Code, § 25602, subd. (a)). We need not decide this issue, as article I, section 28 would give appellants no rights against El Torito or Valet even if no civil immunity applied. Article I, section 28 provides for restitution from *convicted* criminals. Appellants have not alleged that either El Torito or Valet was charged, let alone convicted, of any crime.

For the same reason, we need not consider whether the right to restitution conferred by article I, section 28 constitutes a "fundamental interest," so that any classification affecting it would need to serve a compelling state interest. We note, however, that *Cory* v. *Shierloh, supra,* 29 Cal.3d at pages 439-441, which upheld Business and Professions Code section 25602, subdivision (b) against an equal protection attack, was cited with approval by the California Supreme Court subsequent to the enactment of article I, section 28. (*Strang* v. *Cabrol, supra,* 37 Cal.3d 720, 727-728.)

## CONCLUSION

We sympathize with the predicament in which persons injured by drunk drivers may currently find themselves. The driver may be judgment-proof, while the Legislature has immunized from civil liability the next most responsible party, the furnisher of alcohol. It is not surprising that plaintiffs facing such dilemmas cast their nets wide for potential defendants, to the point of suing parties only peripherally involved in the events leading to their injuries. Nevertheless, correction of injustices stemming from Business and Professions Code section 25602 must be left to the Legislature that enacted it. We urge the Legislature to consider such action. It is not our function to address the problem by significantly extending the general scope of tort liability, or by narrowing a statutory immunity in a manner not intended by the Legislature.

The judgment is affirmed.

Crosby, J., concurred.

**SONENSHINE, J., Concurring.**—I do not adopt all of the reasoning of the majority. However, I concur in the results and in the sentiments expressed in the conclusion.

Appellants' petition for review by the Supreme Court was denied February 16, 1989.