[No. B043922. Second Dist., Div. Three. Nov. 15, 1990.]

SCOTT WILLIAMS, Plaintiff and Appellant, v.
SAGA ENTERPRISES, INC., Defendant and Respondent.

COUNSEL

Byers, Kroll, Kuittinen & Lyden and Michael W. Byers for Plaintiff and Appellant.

Wesierski & Zurek and Ronald Zurek for Defendant and Respondent.

OPINION

**CROSKEY, J.**—Plaintiff Scott Williams (plaintiff), appeals from a summary judgment granted in a personal injury action against respondent, a restaurant serving alcohol. We determine here that a triable issue of material fact exists as to whether the restaurant owed a duty to plaintiff based on a claimed undertaking by one of its employees to withhold a patron's car keys if the patron was not fit to drive his vehicle after he left the restaurant. Plaintiff alleged that he suffered injuries in an automobile accident with the patron shortly after the patron obtained his car keys and drove away in an intoxicated condition from the restaurant. Because plaintiff has raised a triable issue of material fact in his opposition to the motion for summary judgment, that judgment must be reversed.

## PROCEDURAL AND FACTUAL BACKGROUND

On May 18, 1986, plaintiff was travelling on the Ventura Freeway in the County of Los Angeles when the vehicle in which he was riding was involved in an accident with another vehicle and he was injured. On May 6, 1987, plaintiff filed an action for personal injuries stemming from the accident. The suit was filed by and through plaintiff's father acting as a guardian ad litem because plaintiff was in a coma as a result of the injuries sustained in the accident.

Named as a defendant was Lee Roger Chandler (Chandler), the driver of the other vehicle. Plaintiff's complaint alleges that Chandler was intoxicated at the time of the accident and such intoxication caused or contributed to plaintiff's injuries.

Joined in the case as a Doe defendant was the respondent, Saga Enterprises, Inc. (Saga). Saga owns and operates a Black Angus Restaurant (the restaurant). Through discovery, plaintiff learned that Chandler had been drinking at the restaurant before the accident occurred. Plaintiff also learned that employees of the restaurant had received Chandler's car keys before serving him drinks and had returned the keys to him after Chandler

had become intoxicated. Plaintiff contends that returning the keys to Chandler constituted a negligent entrustment of the vehicle by Saga and rendered Saga liable to plaintiff.

Saga filed a motion for summary judgment, contending that it had no duty to keep Chandler's keys, that the restaurant was only a bailee and therefore could not be charged with negligent entrustment, and that by statute (Bus. & Prof. Code, § 25602 and Civ. Code, § 1714) Saga could not be liable for Chandler's intoxicated negligence. Those contentions also form the issues on appeal.

After reviewing the moving and opposing papers, the trial court granted the motion for summary judgment and judgment was entered June 23, 1989. Thereafter, plaintiff filed a timely appeal.

## DISCUSSION

### 1. *The State of the Law Regarding Liability for Furnishing Alcoholic Beverages*

Civil Code section 1714 (section 1714) formerly stated in its entirety: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the Title on Compensatory Relief."

Business and Professions Code section 25602 (section 25602) formerly stated in its entirety: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor."

In a series of cases decided in the 1970's, the California Supreme Court held that persons who furnish intoxicating beverages to others could be held liable to third parties for the harm which is caused those parties by the intoxicated persons. In *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], the court found that section 25602 imposed on tavern owners a duty of care to members of the public and that civil liability on the part of tavern owners could result from the furnishing of alcoholic beverages to a customer in violation of that section.

Regarding the element of proximate cause, the *Vesely* court stated: "[A]n actor may be liable if his negligence is a substantial factor in causing an

injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct. [Citations.] Moreover, 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest.2d Torts, § 449; [citations].) [¶] Insofar as proximate cause is concerned, we find no basis for a distinction founded solely on the fact that the consumption of an alcoholic beverage is a voluntary act of the consumer and is a link in the chain of causation from the furnishing of the beverage to the injury resulting from intoxication. Under the above principles of proximate cause, it is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent." (*Vesely* v. *Sager, supra*, 5 Cal.3d at pp. 163-164.)

In *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719], the court held that a Nevada tavern keeper could be held liable under California law for injuries resulting from the furnishing of alcoholic beverages when the defendant solicits the business of California residents, knowing they will use California highways to get to and from the defendant's drinking establishments in Nevada. (*Id*. at p. 322.) The court acknowledged that the Nevada defendant was not subject to liability based on a California criminal statute (§ 25602), but stated that although *Vesely* used section 25602 as a basis for finding a duty, duty could still be found "under modern negligence law." (16 Cal.3d at pp. 324-325.) The court stated that persons are required to exercise ordinary care in their actions and are responsible for injuries caused by the lack of such care.

In *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144 [145 Cal.Rptr. 534, 577 P.2d 669], the court extended *Vesely* liability to social hosts, finding that both section 25602 and the common law's general negligence principles support that extension. The court stated: "We think it evident that the service of alcoholic beverages to an obviously intoxicated person by one who knows that such intoxicated person intends to drive a motor vehicle creates a *reasonably foreseeable* risk of injury to those on the highway. (See *Vesely*, [*supra*, 5 Cal.3d] at p. 164.) Simply put, one who serves alcoholic beverages under such circumstances fails to exercise reasonable care." (21 Cal.3d at pp. 152-153.)

As a direct response to these Supreme Court holdings, the Legislature amended sections 1714 and 25602 in 1978.[1] (Stats. 1978, ch. 929, §§ 1 & 2, pp. 2903-2904.) As a result of those amendments, the court's holdings were abrogated. Thus now, by statute, a defendant cannot be held liable in a civil action for merely furnishing alcohol to an intoxicated person who then injures someone else because of his intoxication. ■ Obviously this statutory immunity applies to bartenders, and vicariously to their employers. It would also extend to parking lot attendants (and their employers) who merely return vehicle keys to drivers who are under the influence of alcohol. In such circumstances, the return of the keys simply concludes a bailment arrangement between the driver of the car and the parking lot company. If "the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause" (§ 1714), then the furnishing of an intoxicated driver's keys to him cannot logically be the cause of such injuries either. This case, however, presents a significant twist to that analysis and to the protection given by the Legislature to those in the alcohol industry.

### 2. The Evidence Which Plaintiff Presented to Take His Case Outside of Sections 1714 and 25602

In his opposition to Saga's motion for summary judgment, plaintiff presented a partial reporter's transcript from the trial of the criminal prosecution of Chandler. The partial transcript reflects a portion of the

---

[1] The 1978 amendment to section 1714 designated the original text of that section as subdivision (a) and added the following provisions.

"(b) It is the intent of the Legislature to abrogate the holdings in cases such as Vesely v. Sager (5 Cal.3d 153), Bernhard v. Harrah's Club (16 Cal.3d 313), and Coulter v. Superior Court ([21] Cal.3d [144]) and to reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of furnishing alcoholic beverages to an intoxicated person, namely that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person.

"(c) No social host who furnishes alcoholic beverages to any person shall be held legally accountable for damages suffered by such person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of such beverages."

The 1978 amendment to section 25602 designated the original text of that section as subdivision (a) and added the following provisions.

"(b) No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage.

"(c) The Legislature hereby declares that this section shall be interpreted so that the holdings in cases such as Vesely v. Sager (5 Cal.3d 153), Bernhard v. Harrah's Club (16 Cal.3d 313) and Coulter v. Superior Court ([21] Cal.3d [144]) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person."

testimony of a Bob Nolan, who was Saga's night manager for the restaurant on the night of the accident. At that criminal trial, Mr. Nolan testified to the custom that Chandler had of giving his car keys to the bartender at the restaurant whenever he came to the establishment. ■ ■■ ■ ■ Saga filed objections to plaintiff's use of this evidence.[2]

■ In challenging the use of the transcript, Saga used a shotgun approach, stating that "the testimony given was not in this action, it is not a complete transcript, it has not been properly authenticated or documented, is incomplete and without foundation, is heresay [*sic*], improperly contains opinions and conclusions of testimony, and the requisite original declaration has not been served or filed." Saga submitted no discussion and points and authorities to support those contentions. We believe the objections are not well taken.

While the reporter's transcript is from another case, the effect of the examination made of Mr. Nolan is the same as would be a declaration supplied by him in this case.[3] Nolan was asked questions under oath and he answered them. Saga does not explain why statements made by Nolan in the criminal trial should not be used here. Plaintiff does not seek to use the transcript to collaterally estop Saga from presenting any defenses or facts at a trial of this case; plaintiff simply seeks to raise a triable issue of material fact with respect to a duty of care which he contends Saga owed to him, and thereby defeat Saga's motion for summary judgment.

As for the objections that the transcript pages submitted to the trial court by plaintiff are not the complete transcript, we see no need for plaintiff to submit with his opposition papers any more of Nolan's testimony than he felt was necessary to defeat Saga's motion. Nor is there a problem with authentication, documentation or foundation; we have examined the declaration submitted by plaintiff's attorney to support the introduction of the partial transcript and we find it sufficient, counsel having identified the partial transcript and the pages being presented, and having declared under penalty of perjury that the few pages being submitted are true copies from the partial reporter's transcript.

[2] The record does not reflect whether the trial court ruled on the objections. However, that is of no consequence; we must determine the validity of those objections ourselves since our standard of review is a de novo examination of the order which granted the motion for summary judgment. (*Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 474 [261 Cal.Rptr. 735].)

[3] Such testimony could not be received in this case over a hearsay objection on the ground that it is admissible under the "former testimony" exception. Under Evidence Code section 1292, subdivision (a), it is required that the declarant (i.e., Mr. Nolan) be unavailable as a witness. No such showing is made here. However, inasmuch as the recorded testimony was offered in support of the opposition to a summary judgment motion and serves effectively as a declaration by Mr. Nolan, we treat it here as such.

Regarding Saga's assertion that Mr. Nolan's testimony is hearsay and improperly contains opinions and conclusions, we first note that Saga did not comply with California Rules of Court, rule 345, which requires an objection to evidence to state the page and line number of the document to which objection is made. Further, we find that the portions of the transcript necessary to defeat Saga's motion are free from any and all of these problems.

Specifically, Mr. Nolan testified that (1) he was Saga's night manager on the night of the accident; (2) he had knowledge of Chandler's drinking habits; (3) Chandler was a regular customer of the restaurant, coming there at least once a week, between 8 p.m. and 10 p.m., sometimes for dinner and sometimes just for drinks; (4) Chandler, in Nolan's presence, gave his car keys to the bartender on the night of the accident; (5) Chandler would turn over his keys every time he went to the restaurant; (6) he (Nolan) and Chandler had previously discussed Chandler's giving his keys over; and (7) he (Nolan) would not have returned the keys to Chandler if Chandler had been under the influence. When asked why he would not have returned the keys, Nolan stated: "[Chandler] and I, after getting to know him, having come in the bar several times and giving me his keys to hold, became friends. And I felt it was my duty and responsibility as a friend, not only as the manager of the establishment, to make sure that he was able to drive before I was able to give him his keys."

In determining whether to grant a summary judgment, a court shall consider, among other things, "all inferences reasonably deducible from the evidence." (Code Civ. Proc., § 437c, subd. (c).) Although Nolan did not specifically testify as to Chandler's purpose in turning over his keys to the bartender, it is reasonable to infer from Nolan's testimony that he and Chandler had an arrangement or agreement whereby Chandler would give his car keys to the bartender and Nolan would, when Chandler was ready to leave, determine whether Chandler was able to safely drive his car or whether he was under the influence of alcohol. It may further be reasonably inferred that Nolan had committed to Chandler that the car keys would *not* be returned if Chandler were under the influence. It is these two inferences from Nolan's testimony upon which plaintiff rests his argument

Finally, as for Saga's evidentiary objection that "the requisite original declaration has not been served or filed," we do not know to what Saga refers. California Rules of Court, rule 345, requires that written evidentiary objections made in connection with a motion for summary judgment "state the grounds of objection with the same specificity as a motion to strike evidence made at trial." We decline to guess at what Saga's objection means.

### 3. *The Relevance of Nolan's Testimony*

#### a. *Section 324A of the Restatement Second of Torts*

 Plaintiff asserts that this "good Samaritan" role adopted by Saga's employees with respect to him takes the instant case out of the scope of the liability limitations set out in sections 1714 and 25602 and places it within the parameters of section 324A of the Restatement Second of Torts. That section states: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if, [¶] (a) his failure to exercise reasonable care increases the risk of such harm, or [¶] (b) he has undertaken to perform a duty owed by the other to the third person, or [¶] (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."[4] (See, e.g., *Donald* v. *Garry* (1971) 19 Cal.App.3d 769, 771 [97 Cal.Rptr. 191, 45 A.L.R.3d 1177].)

By statute, a tavern owner has no duty to the public insofar as his patrons' consumption of alcohol affects those persons. However, Nolan's testimony and the inference reasonably deducible from it, to wit, that Chandler placed his keys with the bartenders to keep himself from driving while under the influence, are sufficient to create a triable issue of material fact as to whether what occurred at the restaurant on the night of the accident makes section 324A of the Restatement applicable to this case.[5]

#### b. *Sections 314 and 314A of the Restatement Second of Torts*

Citing *Andrews* v. *Wells, supra*, 204 Cal.App.3d 533, Saga seeks to avoid application of Restatement Second section 324A by characterizing this case as coming under Restatement Second sections 314 and 314A. Section 314 states: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." As *Andrews* notes, "all per-

---

[4] It is of no consequence whether the arrangement which plaintiff contends Chandler had with the employees at the restaurant is viewed as one made gratuitously by the restaurant or one in which the consideration given by Chandler was his continued business there.

[5] The duty of a volunteer ends once he had performed his voluntary act. (*Andrews* v. *Wells* (1988) 204 Cal.App.3d 533, 541 [251 Cal.Rptr. 344].) Thus, although, according to Nolan, Saga's employees had previously held Chandler's keys for him, it is not those past acts that bring this case with in Restatement Second of Torts section 324A. Rather, it is plaintiff's assertion that on the night of the accident, the restaurant employees took Chandler's keys, apparently in accordance with an understanding or agreement made with Chandler, and then returned the keys to him.

sons are required to avoid injuring others through their affirmative conduct, but in the absence of special factors no one is required to save another from a danger which is not of his making. [Citation.]" (*Id.* at p. 539.) Thus, while malfeasance is usually actionable, nonfeasance is generally actionable only when there is some special relationship between the parties. (*Ibid.*) Restatement Second section 314A sets out examples of special relationships which will warrant a finding of liability for nonfeasance.

■ While Saga is correct in arguing that no such special relationship exists between a tavern owner and its patrons (*Andrews* v. *Wells, supra*, 204 Cal.App.3d at pp. 539-541), this lack of a special relationship cannot be the basis of a summary judgment, given the duties set out in Restatement Second of Torts section 324A, as discussed above, and the possibility that section 324A applies here. In that respect, this case is similar to *Williams* v. *State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137], where the plaintiff had presented the issue of "whether the mere fact that a highway patrolman comes to the aid of an injured or stranded motorist creates an affirmative duty to secure information or preserve evidence for civil litigation between the motorist and third parties." (*Id.* at p. 21.) The *Williams* court held that giving such aid "does not, in itself, create a special relationship which would give rise to such a duty." (*Ibid.*)

The *Williams* court noted that under the facts presented in that case, several sections of the Restatement Second of Torts were involved—sections 314 and 314A (which the *Williams* court used as a basis for its holding and which Saga seeks to apply here) and section 323 (which is a companion section to section 324A [the section upon which plaintiff relies] and which applies to situations where a defendant has undertaken, either gratuitously or for consideration, to render services to another for the protection of *that other's* person or things, rather than a third person's person or things). The court found that although section 314 prevented a cause of action based on what plaintiff had alleged in her complaint, the judgment on the pleadings given to the State should be reversed and the plaintiff should be permitted to amend her complaint to bring herself within section 323. So also here, while sections 314 and 314A may form a basis for a summary judgment, section 324A prevents such a judgment, given the reporter's transcript evidence presented by plaintiff in opposition to Saga's motion.

### c. *The Bailment Issue*

Describing Chandler's deposit of his keys with the bartender as a "bailment," Saga cites *Knighten* v. *Sam's Parking Valet* (1988) 206 Cal.App.3d 69 [253 Cal.Rptr. 365], to support its summary judgment. However, the instant case certainly is not like the mere bailment arrangement in

*Knighten*, where the court found that a restaurant and its valet service were under no duty to withhold keys from a patron who had become intoxicated at the restaurant, driven her car from the premises, and injured the plaintiffs in the process.[6] Unlike the case at hand, *Knighten* did not involve a Restatement Second section 324A issue. Thus, Saga's reliance on *Knighten* is to no avail.

### d. *The Negligent Entrustment Issue*

Citing *Mettelka v. Superior Court* (1985) 173 Cal.App.3d 1245 [219 Cal.Rptr. 697] (which held that a co-owner of a vehicle may be held liable for negligently entrusting that vehicle to the other co-owner), Saga also seeks to justify its summary judgment on the basis of the rules regarding negligent entrustment of vehicles. Saga seeks to deny liability on the grounds that it had no right to retain possession of Chandler's keys and therefore cannot be guilty of negligent entrustment.

While we disagree with Saga's assertion that its employees had no legal right to retain Chandler's keys (*Knighten v. Sam's Parking Valet, supra*, 206 Cal.App.3d at pp. 75-76), we do agree that this case does not involve a negligent entrustment. The vehicle driven by Chandler belonged to him, not to Saga or one of its employees. However, plaintiff's lack of a cause of action based on negligent entrustment cannot justify Saga's summary judgment, given the Restatement Second of Torts section 324A issue presented by plaintiff's opposition to the motion for summary judgment. Thus, *Mettelka* is also of no value to Saga.

### CONCLUSION

The plaintiff has submitted evidence to raise a triable issue of material fact regarding whether Saga's restaurant and its patron, Chandler, had an arrangement or agreement on the night of the accident to the effect that the restaurant employees would not give Chandler's keys back to him if he were under the influence of alcohol. If such an arrangement existed, Saga may have liability to plaintiff based upon the principles expressed in section

---

[6] The court in *Knighten* explained that although the valet service could have refused to give the keys back to the driver since "All citizens in California have the right to interfere with an attempt to commit a crime, and drunk driving obviously is that [citation]," the valet service did not have a *duty* to do so. (*Knighten v. Sam's Parking Valet, supra*, 206 Cal.App.3d at pp. 75-76.) Quoting from another case, the court said: " 'As a general rule, one owes no duty to control the conduct of another . . . .' (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894] . . . .) Only a special relationship between the two parties, or between the one party and the potential victims of the other, creates such a duty. (*Ibid.*)" The *Knighten* court found no such special relationship in the case before it. (*Id.* at pp. 73-74.)

324A of the Restatement Second of Torts. Therefore, the trial court erred in awarding Saga a summary judgment.

## DISPOSITION

The judgment appealed from is reversed, and the cause is remanded to the trial court with directions to vacate its order granting Saga's motion for summary judgment and conduct further proceedings in accordance with the views expressed herein. Costs on appeal to plaintiff.

Klein, P. J., and Danielson, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 14, 1991. Lucas, C. J., and Panelli, J., were of the opinion that the petition should be granted.