NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0514n.06

No. 17-3779

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 16, 2018
DEBORAH S. HUNT, Clerk

MESA UNDERWRITERS SPECIALTY INSURANCE
CO.,

        Plaintiff-Appellant,

v.

SECRET'S GENTLEMAN'S CLUB; GLMR, INC., dba
Secret's; SHARON SNYDER, Individually and as
Administratrix of the Estate of Deceased Desiree Snyder;
TERRY SNYDER,

        Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
).
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
NORTHERN DISTRICT OF
OHIO

BEFORE: GIBBONS, WHITE, and STRANCH, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** In this insurance-coverage declaratory-judgment

action, Plaintiff Mesa Underwriters Specialty Insurance Co. (Mesa) appeals the district court's

grant of partial summary judgment in favor of Defendants Secret's Gentleman's Club and GLMR,

Inc.[1] (together Secret's), and Sharon and Terry Snyder (the Snyders), and the district court's denial

of Mesa's motion for judgment on the pleadings. We AFFIRM.

**I.**

On April 5, 2014, twenty-two year old Desiree Snyder was killed when the vehicle she was

a passenger in was struck head-on by a vehicle driven by Julio Vargas who, heavily intoxicated,

---

[1] At the time, Defendant GLMR did business as Secret's.

was driving the wrong way on I-480. Minutes before the head-on collision, Defendant Secret's, an adult entertainment bar in Cleveland, had ordered Vargas to leave its establishment.

At the time, Mesa insured Secret's under a Commercial General Liability Coverage policy that afforded liability coverage for "bodily injury" (defined to include death) caused by an "occurrence" (defined as an "accident"; the term "accident" is not defined in the policy). PID 220, 222/Policy. As pertinent here, the policy contained a liquor liability exclusion, which excluded coverage for:

> "Bodily Injury" or "property damage" for which any insured may be held liable by reason of:
>> (1) Causing or contributing to the intoxication of any person;
>> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

PID 725/Liquor Liability Exclusion.

## A. State-Court Action

Desiree's parents, Defendants Sharon and Terry Snyder, filed an action in the Cuyahoga County Court of Common Pleas against Vargas, Secret's, Gigi's Lounge (another adult entertainment bar insured by Mesa), and others not pertinent here, alleging claims of common-law negligence, wrongful death, conscious disregard/willful and wanton misconduct, survivorship, loss of consortium, and violations of Ohio's Dram Shop Act, Rev. Code § 4399.18, by Gigi's Lounge and Secret's. Cuyahoga Court of Common Pleas Case No. CV-15-839575 filed 1/28/15. PID 57/state court complaint.

After receiving notice of the state-court action, Mesa notified Secret's by letter dated February 25, 2015, that it would not defend or indemnify Secret's against what it termed a "liquor

2

liability" claim. PID 681. Mesa provided a defense for Gigi's Lounge in the state-court action because Gigi's had purchased additional liquor-liability coverage. PID 1613/Dist. Ct. Op.

Secret's obtained counsel at its own expense.[2] Trial in the state court action was scheduled for May 25, 2016. On May 9, 2016, the Snyders and Secret's executed a Confidential Agreement and Stipulation for Consent Judgment under which the parties agreed to "enter into a consent judgment on Plaintiffs' causes of action for Negligence and Conscious Disregard (Counts Five (5) and Six (6) of Plaintiffs' Complaint) for all wrongful death, survivorship, conscious pain and suffering, and loss of consortium damages," and GLMR agreed to pay the Snyders $200,000 toward the judgment. This Confidential Agreement further provided:

> 4. In consideration of the payments toward the judgment . . . and the mutual promises set forth herein, GLMR hereby assigns any claims it has against the Insurer including indemnification, breach of contract, failure to defend and indemnify, breach of fiduciary duties and bad faith, along with enforcement of any judgment awarded to Plaintiffs other than reimbursement provisions contained herein. GLMR further agrees to (1) provide truthful testimony and to cooperate in any supplemental or separate action brought by Plaintiffs against the Insurer . . . and (2) cooperate with any attorney selected by Plaintiffs, at no cost to GLMR, to bring the claim or claims against the Insurer in Plaintiffs' own name or defend claims under any declaratory judgment action brought by the insurer against GLMR.
>
> In consideration of the payments toward the judgment . . . the Parties hereby agree that Plaintiffs will obtain a judgment against GLMR in an amount to be determined by the Court at a designated hearing ("Lawsuit Judgment"). Plaintiffs agree not to execute on the Lawsuit Judgment against GLMR except against the Insurer as set forth herein. Should Plaintiffs prevail in a final judgment against the Insurer and the judgment is satisfied, or settle with the insurer and the settlement is paid, the Parties agree that GLMR shall immediately cease Periodic Payments. Any settlement shall be with the consent of GLMR and this consent shall not be unreasonably withheld.

---

[2] During the pendency of the state-court action, Secret's counsel wrote Mesa at least four letters, several directing Mesa's attention to the Snyders' claims of common-law negligence unrelated to the sale or service of alcohol, and urging Mesa to reconsider its denial of a defense. *See* PID 686-87/letter dated 3/25/15; PID 820/letter dated 8/25/15. Mesa's response to Secret's March 25, 2015 letter was that it had "no reason to ascribe any veracity to Plaintiffs' allegations," and advised that it would continue to deny coverage and defense for the claims for reasons including that "all the claims against the Defendants are subject to the liquor liability exclusion." PID 693, 694/Mesa letter dated 6/25/15 on cover page and 7/15/15 elsewhere. Mesa did not respond to Secret's August 25, 2015 letter. PID 851/Declaration of Secret's counsel, Ronald Lee, ¶ 9.

> In addition, should Plaintiffs prevail against or settle with the Insurer, Plaintiffs agree, upon payment of the judgment or settlement by the insurer, to reimburse GLMR for attorneys fees, costs, and the amounts paid up to that point in this Agreement on a pro rata basis in comparison to the judgment entered by the Trial Court . . . .
>
> . . . .
>
> 10.  Plaintiffs agree to defend, indemnify and hold harmless the Defendants from any and all claims, demands . . . of any nature or kind. . . .
>
> 11.  This Agreement and Stipulation and its implementation are strictly confidential and may not be disclosed to any other party, except Defendants' and Plaintiffs' insurers . . . and by order of a court having jurisdiction or otherwise required by law; and otherwise by written agreement of the Parties.

PID 1460-62.[3]

The trial proceeded as scheduled.  Almost a week into trial, the Snyders and Gigi's Lounge settled.  The case went forward against Secret's and GLMR.  Around May 31, 2016, Secret's and the Snyders entered into an Amended Stipulation for Consent Judgment allowing Secret's to continue to deny liability and allowing the state court to determine Secret's liability and damages, if any, for the Snyders' common-law negligence, wrongful death, and survivorship claims:

> Now come the Plaintiffs and Defendant, GLMR, Inc., by and through their counsel of record, and hereby stipulate that the Trial Court can consider a consent judgment being entered against Defendant GLMR, Inc. on Counts [1, 5, 6, and 7] of Plaintiffs' Complaint for an amount to be determined by the Trial Court at a hearing on Plaintiffs' damages, including but not limited to, survivorship damages . . . , wrongful death damages . . . and loss of consortium.
>
> . . . .
>
> Defendant Secrets specifically denies liability on any causes of action brought by Plaintiffs, but agree[s] to allow the Trial Court to evaluate the liability evidence and damages prior to entering a consent judgment, if any.  Defendant Secrets has filed an Answer denying the substantive portions of Plaintiffs' Complaint and that

---

[3] On May 18, 2016, the Snyders and GLMR filed a "Stipulation for Consent Judgment (Partial Against Defendant GLMR, Inc.," which provided:

> Now come the Plaintiffs and Defendant, GLMR, Inc., by and through their counsel of record, and hereby stipulate to a consent judgment being entered against Defendant GLMR, Inc. on Counts [1, 5, 6, and 7] of Plaintiffs' Complaint for an amount to be determined by the Trial Court at a hearing on Plaintiffs' damages, including but not limited to, survivorship damages . . . , wrongful death damages . . . and loss of consortium.

> Plaintiffs' claims against all other Defendants currently in the action remain pending.

PID 530-32.

> Answer remains in full force and effect until the Court holds a hearing and evaluates the evidence on liability and damages.
>
> All previous stipulations for future consent judgments are null and void.

PID 895-97/Amended Stip. For Consent J. filed electronically 5/31/16; PID 1614/Dist. Ct. Op.

The state court scheduled an evidentiary hearing for August 3, 2016. Before that hearing, the Snyders withdrew their Dram Shop claims against Secret's, so there were no statutory claims before the state court. The evidentiary hearing was held pursuant to the Amended Stipulation for Consent Judgment quoted above. The evidentiary record included 25 deposition transcripts and numerous other admitted exhibits. It is undisputed that Mesa had notice of the hearing, but it did not participate in the hearing on behalf of Secret's. Counsel for Gigi's Lounge, paid for by Mesa, was present, although by that time Gigi's Lounge and the Snyders had settled all claims. PID 1614/Dist. Ct. Op.

On September 28, 2016, the state court issued its Findings of Fact and Conclusions of Law, portions of which are quoted below.

> On August 3, 2016, this Court held an evidentiary hearing to determine the liability, if any, of Defendant GLMR, Inc. dba Secrets Gentleman's Club (hereinafter "Secrets") on Counts One (wrongful death claims), Five (common law negligence claims) and Seven (survivorship claims) of Plaintiffs' Complaint, as well as the damages to be awarded on these claims, if any.
>
> This hearing was held pursuant to an Amended Stipulation for Consent Judgment ("Stipulation") filed on May 31, 2016. In this Stipulation, Secrets agreed this Court could properly determine its liability on these Counts, if any, after first conducting an evidentiary hearing and fully evaluating both the liability and damages evidence contained in the evidentiary record.
>
> Notice of the August 3, 2016 hearing was provided to all parties . . . . Mesa chose not to intervene or be heard during this hearing, the purpose of which was to determine the liability of its insured and the damages to be awarded, if any. At no point during this entire litigation did Mesa defend Secrets, whether under a reservation of rights or otherwise, despite having repeated opportunities to do so. In addition, at no point in time before the hearing date of August 3, 2016 or the earlier trial date of May 25, 2016 did Mesa file a declaratory judgment in this or any other court to seek a determination of its duty to defend or indemnify Secrets.

After fully considering the evidence and testimony presented at the hearing, and also independently reviewing all of the relevant pleadings, depositions, trial exhibits, and entire evidentiary record pertaining to the claims at issue, this Court issues the following Findings of Fact and Conclusions of Law:

## I.    FINDINGS OF FACT

. . . .

3.   The toxicological evidence shows that Julio Vargas' blood alcohol content (BAC) at the time of the crash around 11:44-11:45 pm was likely .263 to .265–well over three times the legal limit . . . .

4.   As discussed in greater detail below, this Court's determination of Secrets' liability is not premised on its selling or furnishing of alcoholic beverages to Mr. Vargas or on a statutory violation of Ohio's Dram Shop statute, R.C. § 4399.18. Instead, and pursuant to the parties' Stipulation, this Court's sole focus is on Secrets' alleged common law negligence based on the unique and case-specific facts and attendant circumstances involved here, as alleged in Count Five of Plaintiffs' Complaint and further supported and augmented by the evidentiary record.  These claims are separate, distinct and independent from the sale or service of alcoholic beverages.

. . . .

6.  In order to properly evaluate Secrets' liability for its alleged failure to discharge its common law duty of reasonable or due care to avoid foreseeable harm to others, it is first necessary to examine Mr. Vargas' known alcohol consumption before arriving at Secrets, his extremely intoxicated condition when he arrived at Secrets after leaving nearby Gigi's Lounge, and the unique facts and attendant circumstances of what transpired while Vargas was at Secrets on April 5, 2014.

**Julio Vargas and His Alcohol Consumption Before Arriving at Secrets**

. . . .

8.  As of April 5, 2014, Julio Vargas did not have a valid driver's license.

. . . .

10.  At around 5:00-5:30 pm on April 5, 2014, Julio Vargas drank two beers at home around dinner time . . . .  He drank two . . . beers and two or three shots of Hennessy in [a] liquor store's parking lot and also snorted some cocaine.  He then went to an adult entertainment bar (now known to be Fox's Den) where he consumed three more beers and three more shots of Hennessy.  By this point, Vargas had already consumed at least 7 beers and 5-6 shots of Hennessy, for a total of at least 12-13 drinks.  He was visibly and noticeably intoxicated at this point.

. . . .

12.  Upon arriving at Gigi's at approximately 7:22 pm, Vargas promptly ordered a Corona beer and another shot of Hennessy.

13. After consuming these two additional drinks, which would have been at least drink numbers 13-14 or 14-15, Vargas was admittedly so intoxicated that he actually blacked out and lacks a memory of what happened after that. In fact, he has no memory of even later going to Secrets that evening.

14. Gigi's owner, Jennifer Fievet, provided two discovery depositions. In the first one, she testified that she kicked Vargas out of the bar at approximately 8:35 pm because he was "weird," non-responsive, irrational, staring her down, and also trying to take another customer's money. He had also inappropriately shoved her, leaving a bruise, and was behaving aggressively.

. . . .

18. Jennifer Fievet was deposed a second time . . . after Gigi's cash receipts were finally produced . . . . According to the cash receipts, Fievet served Vargas *at least* three more alcoholic beverages once she took over as bartender . . . By this time–before being ejected from Gigi's–Vargas had at least 18 to 19 *or more* alcoholic drinks on board.

. . . .

## Julio Vargas' Conduct After Arriving at Secrets

. . . .

24. There is a dispute over how many drinks Vargas was served at Secrets. Only two credits [sic] card receipts were produced for actual drinks being purchased by Vargas using the credit card bearing the name of "Sandra Torres" on it–a charge for $6.75 at 9:03 pm **for a dancer drink**, and the other for **a beer at 9:24 pm**.

. . . .

31. After Vargas made the credit card purchases for the dancer drink and his beer downstairs at Secrets, he and the dancer known as Sabrina walked upstairs to the VIP area where Ms. Corpening was bartending. Vargas purchased another drink for Sabrina, but Corpening testified that she did not serve Vargas anything. She states that Sabrina did come up to her 2-3 times to get a drink for herself.

. . . .

## II. CONCLUSIONS OF LAW

. . . .

2. Plaintiffs' common law negligence claims are sufficiently distinct, separate and independent from a statutory cause of action premised on the sale or service of alcohol. Their common law negligence claims are based on the case-specific facts and attendant circumstances involved here and relate to Secrets' negligence in failing to fulfill its admitted duty of preventing a noticeably intoxicated patron from driving. This includes Secrets' negligence in failing to inform the Cleveland Police Officer working on its premises of Julio Vargas' noticeably and extremely intoxicated condition, of his assault of a club dancer in violation of Ohio law, and of his unauthorized use of a woman's credit card that was clearly not his own. It also includes Secrets' negligence in failing to take *any* action whatsoever to prevent

7

Vargas from driving, despite the foreseeable consequences of its inaction in these regards, along with its negligence in instead choosing to personally escort Vargas out of the club to ensure that he would drive away in the extremely intoxicated condition he was in.

. . . .

7. This Court concludes, based on the unique and case-specific facts and attendant circumstances . . . that Secrets had a common law duty to use reasonable care to prevent foreseeable harm to others, including to Desiree Snyder . . . . Beyond this Court's determination in this regard, Secrets itself admits that it has an obligation or duty to prevent known intoxicated patrons from driving. This includes Secrets' duty to call or involve the police to prevent patrons who are known to be noticeably intoxicated from driving, or to, at a minimum, provide them with a ride or call them a taxi.

8. This Court's determination is also supported by the fact that this was not a situation in which an extremely intoxicated patron merely slipped away undetected or under the radar unbeknownst to the establishment or its management. To the contrary, Vargas was physically brought to Secrets' management after assaulting a dancer on its premises and for all intents and purposes detained by Secrets' management for a period of at least 15-20 minutes between at least 11:20 [and] 11:35 pm.

. . . .

10. Based on the toxicological evidence [that Vargas's BAC was likely between .263 and .265], this Court agrees with Plaintiffs' experts that any claim by Manager Vianueva that he did not perceive Vargas' noticeably intoxicated state is incomprehensible. In fact, *multiple* experts have opined that Vargas would have been giving off objectively noticeable and visible signs of intoxication at this time.

11. . . . [T]his Court also holds that Secrets breached its common law duty of reasonable or due care. This includes but is not limited to a breach of its admitted duty to prevent noticeably intoxicated patrons from driving, as well as its breach of its duty to use reasonable care to prevent foreseeable harm to others under the same or similar attendant circumstances as those involved in this unique case. This Court further holds that Secrets' negligent acts and omissions as described herein are a proximate cause of Desiree Snyder's conscious pain and suffering and wrongful death.

12. Secrets' Management acknowledges that if Vargas was intoxicated, they would have to call the police. But here, Vargas was more than merely intoxicated. He was over three times the legal limit, had just criminally assaulted a dancer and was, contrary to Secrets' own rules, trying to use a credit card that was clearly not his own.

13. Incredibly, when Secrets' General Manager was questioned about why he did not involve the police, he testified that he did not do so "because they take forever" and have too slow a response time. This testimony lacks credibility and is contradicted by the evidentiary record . . . . As the on-premises General Manager

and minority owner of Secrets, Vianueva knew that a uniformed Cleveland Police Officer was actually working on-premises at Secrets that evening . . . .

. . . .

15. [] By choosing to personally escort Vargas out of its club in an extremely intoxicated condition, which cannot reasonably be disputed based on the toxicological evidence, Secrets did *nothing* to meet its common law duties . . . .

16. Had Secrets notified Officer Butler of Vargas' extremely intoxicated condition, Vargas wouldn't have driven anywhere . . . . This Court agrees with the expert opinion of Gregory Baeppler, himself a former Cleveland Police Officer with 31 years on the force, that Officer Butler would have been trained and duty-bound to intervene and prevent Vargas from driving. This is particularly true in light of the additional facts . . . that were present when Manager Vianueva had 15-20 minutes of direct face-to-face contact with Vargas . . . . This includes the fact that Vargas had just criminally assaulted a dancer and was also attempting to use a credit card that was obviously not his own. In the first instance, this trained officer would have quickly and easily recognized the numerous visible and noticeable signs of intoxication that <u>any person</u> with a BAC of likely 0.263-0.265 would be giving off, and would have prevented Vargas from driving. Beyond that, this trained officer would more likely than not have taken steps to verify Vargas' identity and would have quickly learned that Vargas had a suspended driver's license, an outstanding DUI warrant, and had just recently been charged with another DUI and hit and run charges in Cleveland just a few months earlier. Alternatively, the officer would have been required to investigate and take appropriate actions in response to Vargas' criminal assault of the club's dancer, including by having Vargas detained and/or charged.

. . . .

19. As noted herein, these Findings of Fact and Conclusions of Law pertain solely to Secrets' common law negligence and a determination of its proportionate share of the liability for the survivorship and wrongful death damages sustained by Decedent Desiree Snyder and her Estate. **When, *as here*, the case-specific facts and attendant circumstances show independent acts or omissions of negligence that are separate, distinct and independent from the sale or service of alcohol, Ohio Courts have permitted common law negligence actions to be maintained against the establishment.** *Mid-Continent Ins. Co. v. Coder*, 563 Fed. Appx. 422 (6th Cir. 2014); *Prince v. Buckeye Union Ins. Co.*, 5th Dist. Richland No. 92-CA-6, 1992 WL 362578 (Dec. 2, 1992); *Auto-Owners Ins. Co. v. JC KC, Inc.*, 9th Dist. Summit No. 18937, 1998 WL 766695 (Nov. 4, 1998); *see also Williams v. Saga Enterprises, Inc.*, 225 Cal. App. 3d 142, 274 Cal. Rptr. 901 (Cal. App. 1990) (genuine issue of fact of whether employees allowing drunk patron to drive away breached duty to innocent motorist).

20. . . . [T]he case-specific facts and attendant circumstances involved here are even more egregious than those involved in the cases cited above. Here, unlike in those cases, a uniformed police officer was actually on the club's premises, but its management negligently chose not to get him involved to handle a patron who was

objectively and extremely intoxicated. Unlike those cases, moreover, the extremely intoxicated patron had just committed a criminal assault on the club's premises, further justifying the need for immediate police involvement to prevent Vargas from leaving and driving away.

21. To summarize, Secrets' negligence claims in this case are separate, distinct and independent from any statutory claim involving or arising from its sale or service of alcohol. In fact, Secrets' failure to cooperate in the official police investigation or to preserve or produce its cash receipts and other evidence pertaining to the night of April 5, 2014 make it difficult for this or any other court to ascertain how much alcohol Secrets may have served to Vargas beyond the one beer it admits serving him more than two hours before its management chose to twice eject him. That said, the following facts are known and have been established. Here, Vargas had at least 19 *or more* drinks before arriving at Secrets in a blacked out state. The toxicological evidence shows he was objectively, extremely and noticeably intoxicated throughout his time at Secrets, including during the 11:20-11:35 time period that Secrets' management had constant and direct face-to-face interactions with Vargas. This was ten minutes or less before the fatal crash occurred . . . .

22. For the reasons set forth above, this Court enters judgment in favor of Plaintiffs and against Defendant GLMR, Inc. dba Secrets Gentleman's Club and its related Defendants . . . . On the issue of apportionment, this Court apportions liability for these damages to Defendant GLMR, Inc. dba Secrets Gentleman's Club and its related Defendants in the amount of one-third . . ., to . . . Gigi's Lounge in the amount of one-third . . . and to Julio Vargas in the amount of one-third . . . . Based on this apportionment, this Court hereby enters a final judgment in favor of Plaintiffs and against Defendant GLMR, Inc. dba Secrets Gentleman's Club and its related Defendants in the amount of $8,038,305.66. FINAL. IT IS SO ORDERED.

PID 318-19, 334-44 (call numbers and some record citations omitted, underlining and italics in original, other emphases added).

## B. The Instant Declaratory Action

Mesa filed this declaratory judgment action against the Snyders and Secret's in federal district court on August 15, 2016, after the state-court evidentiary hearing, but before the state court issued its opinion on September 28, requesting a declaration that it had no duty to indemnify Secret's in the underlying state-court action. PID 1615/Dist. Ct. Op.

The Snyders and Secret's, separately represented, each filed an Answer and Counterclaims for Declaratory Judgment, Breach of Contract, Bad Faith, and Breach of Fiduciary Duty. PID 130-181. Mesa filed Answers to the counterclaims. R. 26 & 27. The parties agreed at a December 6,

2016 status conference on a bifurcated case-management plan under which the declaratory judgment issues would be decided first. R. 23/PID 1630-Dist. Ct. Op.

Mesa filed a motion for judgment on the pleadings, and Secret's and the Snyders filed motions for partial summary judgment. Mesa also filed a motion to dismiss the counterclaims, arguing that Secret's "lacks standing to assert them in light of its assignment of all of its claims to [the Snyders]," and that the Snyders' counterclaims should be dismissed "until they can establish a valid assignment of claims," that is, until they produced the alleged assignment agreement.[4] PID 1363. Mesa's motion for judgment on the pleadings argued that the Snyders' and Secret's exclusive remedy is the Ohio Dram Shop Act and that the state court's decision finding Secret's liable for common-law negligence separate, distinct, and independent from any statutory claims arising from its sale or service of alcohol to Vargas is contrary to Ohio law. PID 1630. Mesa further asserted that the state court's liability determination is not entitled to preclusive effect for reasons including that the issues before the district court were never actually litigated in state court

---

[4] Mesa argued:

> The Defendants present the Court with a vexing conundrum: They both assert counterclaims that can belong to only one of them.
>
> Secrets, as Mesa's insured, asserts counterclaims for breach of contract and bad faith for Mesa's denial of both a defense and coverage . . . .
>
> The Snyders are asserting the same claims, but they were never insured by Mesa. Instead, they allege that Secrets assigned its claims to them and, as assignees, they have the right to assert the claims that could otherwise belong only to Secrets.
>
> The Snyders did not attach the alleged settlement/assignment agreement to their counterclaim, so the Court has no way to tell–apart from the allegations in their pleading–if they are truly the owners of these claims.
>
> . . . .
>
> It is clear that only one of the Defendants can have standing to sue Mesa for these claims. But which one?

PID 1365/Mesa Mo. to Dismiss Defendants' Counterclaims and Mo. to Strike Defendants' Dispositive Motions, filed 3/24/17 (citation omitted).

because Secret's conceded liability and agreed to allow the Snyders to obtain a judgment against it.

Secret's and the Snyders' motions for partial summary judgment sought enforcement of the state-court judgment, asserting that Mesa is bound by the state court's judgment and liability determinations and that Secret's is entitled to both a defense and indemnity from Mesa.[5]

The district court denied Mesa's motion for judgment on the pleadings and granted Secret's and the Snyders' motions for partial summary judgment. The district court concluded that collateral estoppel precluded relitigation of Secret's liability:

> While Mesa may disagree with the State Court's determination that Secrets is liable for common law negligence–separate, distinct and independent from anything having to do with the sale or service of alcohol–the doctrine of collateral estoppel precludes Mesa from attempting to relitigate Secrets' liability in this Court. Further, there is nothing to suggest that the State Court failed to consider all available evidence or thoroughly evaluate the claims before it and, had Mesa wished to challenge the evidence or opine as to the applicability of a particular case to the facts and circumstances of this case, the appropriate place to do so was in the State Court Action.

PID 1633/Op. 7/21/17. The district court further determined that under the insurance-policy language Mesa had a duty to indemnify Secret's. PID 1633-34. Regarding Mesa's duty to defend, the district court concluded that because the Snyders' common-law negligence claims were not "indisputably outside the contracted policy coverage" and could arguably have been covered under the Policy, Mesa's duty to defend was triggered. PID 1635-36. This appeal followed.

## II. Standard of Review

This court reviews de novo the district court's grant of summary judgment, *Sumpter v. Wayne Cty.*, 868 F.3d 473, 480 (6th Cir. 2017), and its denial of judgment on the pleadings, *Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 310 (6th Cir. 2010), as well as its

---

[5] After presenting argument at a May 31, 2017 status conference, R. 51, the parties filed supplemental briefs, R. 52, 53, 54. PID 1631.

interpretation of Ohio state law in this diversity case, *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012).

### III. Collateral Estoppel

Mesa asserts that the district court erred by applying collateral estoppel to a collusively obtained state-court judgment that failed to satisfy the required elements under Ohio law.

Under Ohio law, collateral estoppel, or issue preclusion, prevents relitigation of any fact or issue that "(1) was actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction; and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994) (citing *Whitehead v. Gen. Tel. Co.*, 254 N.E.2d 10 (Ohio 1969)). Mesa does not dispute the second requirement, that the state court was one of competent jurisdiction, but does challenge the other two.

### A. Actually Litigated

Mesa first asserts:

> The issue the Appellees seek to establish in this coverage case is . . . that Secrets' common law negligence was "separate, distinct, and independent" from the sale or service of alcohol. This issue, when viewed in light of both the [May 9, 2016] Settlement and Assignment Agreement [in which Mesa contends Secret's conceded liability] and the Defendants' failure to fully disclose it to the trial judge, bears most immediately on two elements of collateral estoppel:
>
> (1) Whether the fact or issue was "actually litigated"; and
> (2) Whether dicta can support application of collateral estoppel.

Even assuming that in Ohio an issue or fact that is stipulated is not actually litigated for purposes of preclusion analysis, Secret's did not concede liability, stipulate to liability, or refuse to defend itself. Appellant Br. 42-43. As the state court made clear, it held the evidentiary hearing pursuant to the parties' May 31, 2016 Amended Stipulation for Consent Judgment, under which Secret's and the Snyders agreed that the state court would determine Secret's liability, *if any*, on

13

the Snyders' common-law negligence, wrongful death, and survivorship claims, and damages. PID 318/State Ct. Op.; *see also* PID 1615/Dist. Ct. Op. Liability and damages were not stipulated. Mesa also complains that the parties were required to, but did not, disclose the earlier May 9, 2016 Confidential Agreement to the state court, claiming that the failure to disclose "confirms the collusive nature of the hearing" and that the parties' "conduct leaves little doubt that the Underlying Judgment was the result of collusion between the litigants," Appellant's Br. 45-46. But Mesa does not explain how it was prejudiced by the parties' non-disclosure of the May 9 agreement when the later May 31 agreement preserved Secret's right to contest liability controlled at the hearing.

Mesa points to remarks of the Snyders' counsel at the state-court evidentiary hearing as conceding Secret's liability, asserting that these remarks make clear that the only issue before the state court was damages, not liability. Appellant Br. 44. This claim fails as well. As the state court's opinion makes clear, the evidentiary hearing proceeded pursuant to the parties May 31, 2016 Amended Stipulation for Consent Judgment, which stated:

> Defendant Secrets specifically denies liability on any causes of action brought by Plaintiffs, but agree[s] to allow the Trial Court to evaluate the liability evidence and damages prior to entering a consent judgment, if any. Defendant Secrets has filed an Answer denying the substantive portions of Plaintiffs' Complaint and that Answer remains in full force and effect until the Court holds a hearing and evaluates the evidence on liability and damages.

PID 895-96.

Mesa's next argument, that dicta cannot support collateral estoppel, goes like this. The district court did not actually decide the issue whether Secret's common-law negligence claim was separate, independent, and distinct from the sale or service of alcohol, i.e., the state court's statements to that effect were *dicta* because a finding of separate and distinct acts of negligence was not necessary to the state court's negligence finding. Appellant Br. 42, 46-49. This claim too

fails. The state court clearly determined that Secret's common-law negligence claims were separate from the sale or service of alcohol, and that Ohio law allowed such claims to be maintained under the circumstances presented:

> When, *as here*, the case-specific facts and attendant circumstances show independent acts or omissions of negligence that are separate, distinct and independent from the sale or service of alcohol, Ohio Courts have permitted common law negligence actions to be maintained against the establishment. *Mid-Continent Ins. Co. v. Coder*, 563 Fed. Appx. 422 (6th Cir. 2014); *Prince v. Buckeye Union Ins. Co.*, 5th Dist. Richland No. 92-CA-6, 1992 WL 362578 (Dec. 2, 1992); *Auto-Owners Ins. Co. v. JC KC, Inc.*, 9th Dist. Summit No. 18937, 1998 WL 766695 (Nov. 4, 1998); *see also Williams v. Saga Enterprises, Inc.*, 225 Cal. App. 3d 142, 274 Cal. Rptr. 901 (Cal. App. 1990) (genuine issue of fact of whether employees allowing drunk patron to drive away breached duty to innocent motorist).

PID 341/State Ct. Op. Conclusions of Law 19. The state court was well aware that it could not determine Secret's liability for common-law negligence without addressing whether the Snyders' negligence claims were sufficiently distinct from sale-or-service-of-alcohol claims such that they were independently viable. As stated several times in its opinion, the state court expressly and necessarily determined that, given the unique facts and circumstances here, Ohio law permitted the Snyders to maintain their separate negligence claims. The state court could not have ruled in the Snyders' favor, i.e., could not have found Secret's liable to the Snyders, if the Dram Shop Act provided the Snyders' exclusive remedy. Mesa's dicta argument fails.

Mesa reasserts this argument later in its appellate brief, stating that the issue in the underlying action was Secret's liability for negligence, while the issue here is *insurance coverage*, i.e., that the state court did not determine whether Secret's negligence was separate, distinct, and independent from the sale or service of alcohol for purposes of applying the liquor liability exclusion and thus the issue here, coverage, is not identical to the issue in the underlying state-court action. Appellant Br. 50. That is partially correct. The coverage issue was not before the state court, and the state court did not address the issue. However, the state court did address

whether the Snyders' negligence claims were adequately supported and sufficiently distinct from the sale or service of alcohol such that the Snyders could recover damages in a separate common-law negligence action. Thus, collateral estoppel requires that we take as true that the negligence claims were distinct, but not necessarily that this distinct claim is covered under Mesa's insurance policy.

Mesa also asserts that collateral estoppel does not apply because the state court did not issue a final judgment, specifically because the state court resolved only three of the Snyders' ten claims and its final order did not state "there is no just reason for delay."[6] *See* Ohio R. Civ. P. 54(B). The only purportedly "remaining" claim Mesa mentions is a Dram Shop Act claim. *See* Appellant Br. 11.

In Ohio, a final judgment is "one which determines the merits of the case and makes an end to it." *State ex rel. Curran v. Brookes*, 50 N.E.2d 995, 998 (Ohio 1943). The entry "must disclose the present intention of the court to terminate the action and should contain a sufficiently definitive formal statement indicating such an intention." *Vanest v. Pillsbury Co.*, 706 N.E.2d 825, 830 (Ohio Ct. App. 1997).

Here, as the state court made clear, it ruled only on the Snyders' common-law negligence claims because the Snyders had withdrawn their Dram Shop claim. The state court stated at the August 3, 2016 hearing, "[s]o the court is clear there is not a dram shop claim pending against Secrets." PID 1208. And the state court's opinion reiterates, "There are no statutory claims for this court to adjudicate here," PID 648, and ends with, "this Court hereby enters final judgment in

---

[6] Mesa's cited cases are factually inapposite. For example, in *Barker v. Bryant*, 2016-Ohio-7728, ¶ 5 (Ct. App. 2016), the court did indeed observe, "Absent the mandatory language that 'there is no reason for delay,' an order that does not dispose of all claims is subject to modification and is not final and appealable." In that case, however, the trial court specifically deferred adjudication of an issue related to attorney's fees. *Id.* at ¶ 8. But in the instant case, the state court's judgment and damages award for Desiree's wrongful death rendered the remaining claims, all non-statutory, moot.

favor of Plaintiffs and against [Secret's]." PID 658. The judgment was labeled "FINAL," a separate entry states "DIS. W/PREJ-FINAL," and the Clerk was ordered to issue notice in accordance with Ohio Civ. R. 58(B). PID 1034. Once the state court awarded the Snyders damages for their daughter's wrongful death, any remaining claims were mooted and were merged in the judgment; the ruling was final and immediately appealable. *See State ex rel. Whitehead v. Sandusky Cty. Bd. of Comm'rs*, 979 N.E.2d 1193, 1198 (Ohio 2012) ("[E]ven though all the claims or parties are not expressly adjudicated by the trial court, if the effect of the judgment as to some of the claims is to render moot the remaining claims or parties, then compliance with Civ. R. 54(B) is not required to make the judgment final and appealable." (quoting *State ex rel. A & D Ltd. P'ship v. Keefe*, 671 N.E.2d 13, 19 (Ohio 1996)). An express statement of "no just reason for delay" under Ohio Civ. R. 54(B) is not required to establish finality under such circumstances. *Wise v. Gursky*, 421 N.E.2d 150, 152 (Ohio 1981). Further, the Cuyahoga County Court of Common Pleas issued a Certificate of Judgment to the district court. PID 1065. Mesa's claim that the state court did not issue a final judgment fails.

## B. Privity/Mutuality

Mesa also asserts that collateral estoppel does not apply for lack of mutuality. Mesa claims, incorrectly, that the district court did not address this element. In fact the district court addressed mutuality at some length:

> Mesa was in privity with Secrets and could have sought a declaration as to its rights and obligations or otherwise intervened in the State Court Action, but failed to do so despite having ample opportunity.

> Collateral estoppel applies to an insurer who denies coverage and a defense to its insureds and chooses not to intervene or otherwise protect its interests or those of its insureds. *ALD Concrete & Grading Co. v. Chem-Masters Corp.*, 111 Ohio App. 3d 759, 764, 677 N.E.2d 362 (Franklin County 1996) ("Because Buckeye Union in the present case was given notice and opportunity to defend in the underlying action, and declined to do so based on an asserted lack of coverage, appellant properly concedes upon appeal that it is collaterally estopped from attacking the

> factual and legal conclusions of the trial court in the underlying action, most significantly the trial court's finding that the damages were caused by the sole negligence of Chem-Masters.") (citing *Howell v. Richards*, 45 Ohio St. 3d 365, 367-68, 544 N.E.2d 878, 881 (1989)). *See also Blair v. Mann*, 1999 Ohio App. LEXIS 1630, at *3 (Ohio Ct. App., Lawrence County Apr. 8, 1999); *Patterson v. Tice*, 91 Ohio App. 3d 414, 419, 632 N.E.2d 962 (Tuscarawas County 1993); *Stephenson v. Duriron Co.*, 292 F. Supp. 66, 82 [] (S.D. Ohio Oct. 21, 1968). While Mesa may disagree with the State Court's determination that Secrets is liable for common law negligence–separate, distinct and independent from anything having to do with the sale or service of alcohol–the doctrine of collateral estoppel precludes Mesa from attempting to relitigate Secrets' liability in this Court.

PID 1631-32. The district court's analysis is correct. Ohio law is clear that collateral estoppel applies to an insurer who denies coverage and a defense to its insured and chooses not to intervene or otherwise protect its interests or those of its insured. *See Howell v. Richardson*, 544 N.E.2d 878, 881 (Ohio 1989) (collateral estoppel applies "to those in privity with the litigants and to those who could have entered the proceeding but did not avail themselves of the opportunity"); *see also Patterson v. Tice*, 632 N.E.2d 962, 965–66 (Ohio Ct. App. 1993) (insurer collaterally estopped by trial court's default judgment and factual determinations after denying a defense and failing to intervene).

Mesa cites the factually inapposite *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978 (Ohio 1983), where the issue was whether the manufacturer of an allegedly defective lawnmower was bound by a jury verdict in favor of another consumer in a different jurisdiction. Consistent with the general understanding of the elements of collateral estoppel, the court answered in the negative:

> [T]here were two totally separate accidents, with two different models of a riding lawnmower manufactured in different years by appellant manufacturer; there were different operators of the equipment with perhaps totally different mechanical capabilities; different terrain and weather conditions; also, the same rules of law were not applicable in both states—Florida had enacted a comparative negligence statute at the time of the accident in that case, while Ohio still had the rule of contributory negligence at that time; and, what is critically important to the appellant, the differing trial techniques and appellate determinations that would have been made by legal counsel in the prior case if it had been known that the

18

judgment would have been utilized in subsequent cases to estop a defense on the question of liability. Without the necessity of further analysis . . . , we conclude that the appellees would not be reasonably able to show the requisite "identity of issues" for the application of nonmutual collateral estoppel.

*Goodson*, 443 N.E.2d at 988. The facts of *Goodson* are very different from the ones in the current case. The two proceedings here involve the same occurrence.

Mesa also cites *Bentley v. Grange Mutual Casualty Ins. Co.*, 694 N.E.2d 526, 531 (Ohio Ct. App. 1997), where the issue was "whether persons who are wrongful-death statutory beneficiaries of a single decedent and who have identical rights to UM coverage under a single insurance policy are in privity with each other within the meaning of the doctrine of collateral estoppel such that an adjudication of the right of one to UM coverage will be binding on the others." The *Bentley* court also answered in the negative:

> "Generally, a person is in privity with another if he succeeds to an estate or an interest formerly held by another." *Whitehead*, 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, at paragraph four of the syllabus. Appellees did not succeed to an interest of their parents. Their rights to UM coverage, although identical, are independent of the rights of their parents. Under the Restatement of the Law 2d, Judgments, other factors can contribute to a determination of privity, but appellant has not alleged that appellees controlled the Cuyahoga County action, that appellees agreed to be bound by the Cuyahoga County action, that appellees were represented by their parents in the Cuyahoga County action, or that there existed between appellees and their parents any substantive legal relationship resulting in preclusion. "Most courts * * * will not bind a nonparty to a decision adverse to his interests merely because a common question of fact or law exists in the cases and the nonparty had the same general interest as one of the parties to the lawsuit." Semmel, Collateral Estoppel, Mutuality and Joinder of Parties (1968), 68 Colum. L. Rev. 1457, 1460. Appellees were entitled to their individual day or days in court and were under no obligation to make their day in court the same as that of their parents.

*Id.* at 531–32 (call numbers omitted). Thus, the *Bentley* court found no privity. However, as discussed, there is privity here. Neither *Goodson* nor *Bentley* assist Mesa. Because Mesa and Secret's are in privity, the mutuality/privity element of collateral estoppel is met.

19

### C.  Mesa's Cases Are Distinguishable

Mesa also asserts that "Ohio courts routinely determine coverage under policies subsequent to, and independent of, consent judgments between defendants," citing, among other cases, *Kovesdy v. Utica Fire Insurance Co.*, 695 N.E.2d 1165 (Ohio Ct. App. 1997).  *Kovesdy* is inapposite for several reasons.  First, the underlying liability judgment in *Kovesdy* was entered "based on stipulations by the parties" and there is no indication that the trial court actually decided the liability issues or the bases for liability.  *Kovesdy*, 695 N.E.2d at 1166.  This leads to the second distinction: there was no collateral estoppel asserted or addressed in *Kovesdy* because although the judgment determined liability, it did not purport to address the underlying factual bases for that liability.  Third, the *Kovesdy* complaint "alleged in a single count that defendants sold and served alcohol to underage patrons, including decedent and the tortfeasor" and that the deadly collision "occurred 'as a direct and proximate result of the acts or failure of action as required by Revised Code Chapter 43 [the statutes pertaining to Liquor].'"  *Id.*  Thus, unlike the instant case, which was decided entirely on independent common-law negligence claims, the *Kovesdy* complaint did "not allege a separate [n]egligen[ce claim]," *id.* at 1168, and was based entirely on violations of the liquor control laws.

Mesa also cites *Mustard v. Owners Insurance Co.*, 6 N.E.3d 1235, 1237 (Ohio Ct. App. 2014), in which judgment creditors brought an action against the judgment debtor's liability insurer seeking satisfaction of a stipulated judgment.  *Mustard* too is inapposite for similar reasons. The parties in *Mustard* stipulated that the bar was liable under Ohio's Dram Shop Act and for common-law negligence for serving alcohol to a noticeably intoxicated patron.  *Id.*  Thus, there was no judicial determination of the basis of liability, and it was undisputed that the bar's liability arose from the sale or service of alcohol.  *Id.*  In contrast, the state court in the instant case

adjudicated Secret's liability on the Snyders' common-law negligence claims, which it determined were unrelated to the sale or service of alcohol.

### D. Collusion

Mesa argues for the first time on appeal that collateral estoppel cannot apply because the underlying judgment was the result of collusion between Secret's and the Snyders, relying again on the May 9, 2016 Confidential Agreement, specifically, Secret's assignment of claims to the Snyders. Appellant Br. 45-46. This issue is forfeited for failure to raise it below.[7] *See Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006). Further, the May 9 and May 18, *see supra* n.3, stipulations for a consent judgment were expressly rendered null and void by the May 31 Amended Stipulation for Consent Judgment, which permitted the trial court to "*consider* a consent judgment being entered," allows the trial court "to evaluate the liability evidence and damages prior to entering a consent judgment, if any," and expressly provides that Secret's "Answer denying the substantive portions of Plaintiffs Complaint . . . remains in full force and effect until the Court holds a hearing and evaluates the evidence on liability and damages." PID 895-96 (emphasis added). As to the assignment of claims provisions, Mesa has not explained how they establish collusion when they were dependent on the Snyders obtaining a judgment.

For these reasons, we affirm the district court's determination that collateral estoppel precluded Mesa from relitigating Secret's liability for common-law negligence.

### IV. Secret's Standing

Mesa next asserts that the district court erred in granting Secret's partial summary judgment without considering whether Secret's had standing to assert counterclaims against Mesa. Mesa

---

[7] Mesa did not raise collusion in its Motion for Judgment on the Pleadings, PID 521-25, or in its Reply Brief to the Snyders' and Secret's motions for partial summary judgment, PID 1230-32. Secret's argues the issue is waived. Secret's Br. 23.

asserts that because Secret's assigned its claims to the Snyders under the Confidential Settlement (dated May 9, 2016) Secret's lacked standing. According to Mesa, Secret's contractual right to recovery from the Snyders does not provide Secret's standing to assert the assigned claims against Mesa. Appellant Br. 18. The district court's opinion acknowledges that Mesa sought to dismiss Secret's (and the Snyders') counterclaims, but does not address the standing argument. PID 1630.

Mesa cites one case, *Breech v. Liberty Mutual Fire Insurance Co.*, No. 2:15-cv-2633, 2015 WL 6859676 (S.D. Ohio Nov. 9, 2015), in which a contractor sought to intervene under Federal Rule of Civil Procedure 24 or for joinder under Rule 19. The contractor sought to be paid for work it performed on the plaintiff's house after the house was damaged and the plaintiff made a claim under her homeowner's insurance policy. *Id.* at *1. The plaintiff opposed the motion, asserting that the movant did not have a substantial legal interest in the matter. *Id.* The magistrate judge recommended concluding that the movant was not entitled to intervene of right for reasons including that the contract between the movant and the plaintiff "does not demonstrate any intent on the part of Plaintiff to assign her rights under the insurance policy," thus the movant "is not an assignee of any rights under the insurance policy." *Id.* at *2. Regarding permissive intervention, the court determined that the movant had not articulated a substantial legal interest in "the property or transaction that is the subject of the action." *Id.* (quoting Fed. R. Civ. P. 24(a)(2)). The court noted that "[t]he questions of law or fact that would be material to Movant's claim arise solely from its contractual relationship with Plaintiff, which . . . is distinct from Plaintiff's contractual relationship with Defendant." *Id.* at *3. *Breech* bears no resemblance to this case, where Secret's, the tortfeasor and insured, assigned its rights to the Snyders, but still had an economic interest in the coverage issue.

To establish Article III standing Secret's must show: 1) it suffered an injury in fact, 2) that is fairly traceable to the challenged conduct of Mesa, and 3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Secret's bears the burden of showing that it has standing, *see Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009), and "[w]here, as here, a case is at the pleading stage," Secret's "must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975) (second alteration in original)). The court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Warth*, 422 U.S. at 501).

Secret's pleaded facts demonstrating each element of Article III standing: that it "incurred substantial damages including but not limited to attorney fees, litigation costs, [and] court ordered damages" as a result of Mesa's denial of a defense in the state court, and that the damages it incurred will be redressed by a favorable ruling. *See* PID 414-17/Secret's Answer and Counterclaims.

We agree with Secret's that its assignment of claims to the Snyders, while reserving the right to recover legal fees and expenses it incurred due to Mesa's denial of a defense and coverage, is a valid partial assignment under Ohio law. *See Stephenson v. Duriron*, 292 F. Supp. 66, 80 (S.D. Ohio 1968), *aff'd*, 428 F.2d 387 (6th Cir. 1970) (applying Ohio law and holding that parties may validly assign a portion of their rights against an insurer for indemnity, breach of contract, and breach of warranty while reserving to themselves the right to recover legal expenses they incurred in having to defend the underlying lawsuit).

For these reasons, we reject Mesa's argument that Secret's lacked standing to assert its counterclaims.

## V. Duty to Defend

Under Ohio law, an insurer's duty to defend arises when a complaint alleges claims that arguably could be covered under the insurance policy. *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 33 (Ohio 2007). However, an insurer "is not obligated to defend any claim that is clearly and indisputably outside the contracted policy coverage." *Id.*

Mesa relies on a number of Ohio cases it asserts undermine the state trial court's determination that action or inaction by Secret's supported common-law liability independent of its statutory Dram Shop liability.[8] Mesa argues that because plaintiff had no viable independent common-law claim under Ohio law, there was no arguable liability against which Mesa had a duty to defend. But, assuming, arguendo, that the cases do, in fact, show that the state trial court found common-law liability where it should not have, collateral estoppel precludes relitigation of that determination in this proceeding. Mesa could have provided a defense against these claims, thus establishing their asserted invalidity, or sought declaratory judgment in a timely manner, but it did neither.

We turn to the question whether the district court correctly determined that Mesa owed a duty to defend under its policy, which rests on whether the complaint alleged a claim that potentially or arguably falls within the policy's coverage. *Ohio Gov't Risk Mgmt. Plan v. Harrison*, 874 N.E.2d 1155, 1160 (Ohio 2007). "An insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be

---

[8] Although the cited cases establish that in the vast majority of cases the statutory Dram Shop action will be the exclusive remedy against the liquor-permit holder, the cases do not directly undermine the state trial court's determination because none involve claims that are independent of the furnishing of alcohol.

covered by the insurance policy, even in part and even if the allegations are groundless, false, or fraudulent." *City of Sharonville v. Am. Emp'rs Ins. Co.*, 846 N.E.2d 833, 837 (Ohio 2006). Mesa does not contend that there is no coverage under the policy's statement of coverage; rather, it argues that coverage is excluded by the liquor liability exclusion, which excludes coverage for

> "Bodily Injury" or "property damage" for which any insured may be held liable by reason of:
>> (1) Causing or contributing to the intoxication of any person;
>> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

PID 725.

The district court determined that the state-court complaint included allegations that were not "indisputably outside the contracted policy coverage" and arguably could have been covered under the policy. The district court correctly noted that the Snyders' allegations "contemplate action or inaction on the part of Secrets' employees which would arguably amount to negligence whether or not Mr. Vargas was sold or consumed any alcohol at Secrets." PID 1635-36. And, as the district court observed, "even if [Mesa's] initial review of the Complaint did not convince Mesa of its duty to defend Secrets, Mesa was contacted repeatedly by Secrets' Counsel regarding the fact that allegations of common-law negligence–separate and distinct from causing or contributing to Mr. Vargas's intoxication or the sale or service of alcohol–were being asserted." PID 1636/Dist. Ct. Op.; *see Mid-Continent Ins. Co. v. Coder*, 563 F. App'x 422, 427 (6th Cir. 2014) (applying Ohio law in action brought by insurer seeking declaration that it had no duty to defend or indemnify its insured tavern in an underlying action, and noting, "[t]he district court was wrong to assert that, because the complaint's invocation of the Dram Shop Act and its alleged claim of common-law negligence are mutually exclusive, they cannot both be read in the complaint. It is well settled in Ohio law that litigants are permitted alternative or hypothetical pleading.")

We find no error and affirm the district court's duty-to-defend determination.

## VI. Duty to Indemnify

We turn to the ultimate question of coverage. The district court first found that coverage is provided under the insuring language:

> The Policy provides coverage for bodily injury claims caused by an "occurrence" during the policy period . . . . The Policy defines "bodily injury" to include death, and "occurrence" is defined as an "accident," which is not defined in the Policy. Under Ohio law, when a liability insurance policy defines "occurrence" as an "accident," a negligent act committed by an insured qualifies as an "occurrence."

PID 1633. The district court then turned to the liquor liability exclusion:

> The Policy's Liquor Liability exclusion applies solely to claims for "(1) causing or contributing to the intoxication of any person[;] (2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages." As determined by the State Court, Secrets is liable for [Desiree] Snyder's death based on its negligent acts that are separate, distinct, [and] independent from and unrelated to the sale and service of alcohol and/or statutory Dram Shop provisions. Accordingly, pursuant to the express language of the Policy, Mesa is required to indemnify Secrets on the Snyders' common-law negligence claims which have been adjudicated to final judgment in the State Court.

PID 1633-34/Dist. Ct. Op. Again, we agree.

Although Mesa insists that Secret's liability is premised on "contributing to the intoxication of Vargas," this is contrary to the state court's decision and analysis. Because Mesa presents no argument undermining the district court's analysis of the policy language, we AFFIRM the district court's determination that Mesa has a duty to indemnify Secret's.

The district court's judgment is AFFIRMED in all respects.